Lucius O. Hamilton and Marion Mortgage Company v. J. M. Flowers and Norris McElya, as Receivers, *et al.*

183 So. 811.

Division B.

Opinion Filed October 15, 1938.

*Redfearn & Ferrell* and *Rogers & Morris,* for Appellants;
*S. P. Robineau* and *Vincent C. Giblin,* for Appellees.

PER CURIAM.—J. M. Flowers and Norris McElya, as Receivers for certain Bondholders Committees, filed their bill of complaint in the Circuit Court of Dade County naming as defendants the Marion Mortgage Company, a Corporation; the said Marion Mortgage Company, as Trustee; Northern Investment Company, a Corporation; Trust Company of Florida, a Corporation; the said Trust Company of Florida, as Trustee; M. A. Smith, as Liquidator of the said Trust Company of Florida and as Trustee; and Lucius O. Hamilton.

Lucius O. Hamilton filed his motion to strike certain portions of the bill of complaint and his motion to dismiss said bill. The Marion Mortgage Company also filed a motion to dismiss the bill of complaint, incorporated in its answer to the said bill.

The Circuit Judge entered orders overruling both the motions to dismiss and also the motion to strike. Separate appeals were entered predicated on these adverse rulings. By stipulation and order of the Court the appeals were consolidated.

The bill of complaint and the exhibits appended thereto are very lengthy, covering approximately one hundred pages in the transcript of the record. It is essential to an understanding and discussion of the questions raised on this appeal to review pertinent allegations of the bill of complaint; however, no effort is here made to quote at length from the paragraphs of the bill.

It is alleged that Flowers and McElya, plaintiffs, were appointed Receivers for certain Bondholders Committees, in a case then pending before the Circuit Court, Palmer v. Edmunds, et al. A copy of the order is attached to the bill of complaint as Exhibit "A." Plaintiffs, as such Receivers, were, by order of the court, authorized to institute and prosecute suits as such Receivers might deem necessary for the

establishment, enforcement or protection of any of the assets, securities or evidences of indebtedness to which plaintiffs, as such Receivers, are entitled, etc. (Copy of this order is attached to bill of complaint as exhibit "B.")

It is further alleged that on July 1, 1922, the Miramar Hotel Company, Inc., a Florida Corporation, executed a trust deed to G. L. Miller Bond and Mortgage Company, now known as Marion Mortgage Company, to secure a bond issue of $150,000.00 on the Miramar Hotel property. Subsequent to the issuance of said bonds, they were sold and delivered to a large number of investors scattered throughout the country, most of whom were not residents of the State of Florida. Said trust deed went into default and on August 17, 1928, the Marion Mortgage Company, as trustee, instituted foreclosure proceedings. After taking of testimony, final decree was entered foreclosing said mortgage or trust deed and ordering that the property so encumbered, after proper notice, be sold at public outcry. Said final decree expressly provided that if complainant, or any purchasers acting for the protection of the bondholders, should purchase the property at such sale for an amount not greater than amount ordered to be paid to complainant by the final decree, the said complainant, or any purchasers for the protection of the bondholders, should be required to pay in cash only the amounts of costs, charges, and expenses ordered required to be paid in and by said final decree, including costs of advertising and selling the property, and that the remainder of bid should be taken as credit on the bonds of the bondholders secured by said mortgage or trust deed. Marion Mortgage Company purchased said property for a bid of $120,000.00, and after filing an amended motion for confirmation of sale by which it is made to appear that the bid was made in behalf of the bondholders, the court entered a decree confirming the sale and ordering

the master to execute a deed to said property to the Marion Mortgage Company. Only $20,792.33 was paid in cash, if in fact all of said items were paid, and the remainder of said bid amounting to $99,207.67 was credited upon the amount of indebtedness evidenced by said bonds of the bondholders, and it is alleged that no other outlays or advances, other than the items included in said sum of $20,792.33 have ever been paid by Marion Mortgage Company for the preservation or protection of said mortgaged property. At the termination of the said foreclosure suit the Marion Mortgage Company, having made disbursements for insurance during pendency of suit, cost of abstracts and other legitimate expenses, including trustee's fee, was entitled to a first lien on said properties for $25,224.33, under the terms of the trust deed.

That shortly after the master's deed was executed and delivered to the Marion Mortgage Company the said company in its individual corporate capacity made, executed and delivered to the Northern Investment Company a promissory note in the sum of $40,000.00, with interest at 8 per cent. per annum from date, payable semi-annually. It is alleged on information and belief that at the time of the making, execution and delivery of the note, the Marion Mortgage Company was not indebted in any sum to the Northern Investment Company and that the note was executed without any good, valuable or sufficient consideration; and if there was consideration it did not evidence any indebtedness owing by said equitable and beneficial owners (bondholders) to said Northern Investment Company, or any indebtedness owing by Marion Mortgage Company in its representative capacity as trustee for the bondholders, to Northern Investment Company. On the same day, February 1, 1929, Marion Mortgage Company in its individual and corporate capacity made, executed and delivered to

Northern Investment Company, a mortgage attempting to create a lien in behalf of Northern Investment Company encumbering said property to secure the indebtedness evidenced by said note above mentioned. That said mortgage does not purport to mortgage to the Northern Investment Company the equitable title of the beneficial owners of said property and said equitable owners did not in anywise consent or authorize the execution of the promissory note or mortgage. That on the same day, the Marion Mortgage Company made, executed and delivered a warranty deed conveying said property to the Trust Company of Florida, as trustees, subject to said mortgage. Said warranty deed was properly recorded.

That the beneficial owners of said property did not consent to or authorize the conveyance nor did they have notice or knowledge of the execution of the warranty deed. That the Marion Mortgage Company had no express or implied right or authority to divest itself of such trust in such manner, or to name its successor trustee in such manner without the consent of the beneficial owners (bondholders).

That the Trust Company of Florida, upon delivery of said deed went into possession and occupancy of the said property deriving the rents, profits and income therefrom until December 8, 1931; and thereby the Trust Company of Florida became and was "the holder of the legal title to the said property as a trustee *de son tort,* its trust became, and was, a simple, dry or naked trust, and it was not, and never has been, competent to sell or dispose of the said trust property, or to give discharges for the proceeds of any sale of the said property or the rents, income or profits of the said trust estate."

That on April 2, 1929, the said Northern Investment Company executed a written assignment of the aforementioned note and mortgage, purporting to be an encumbrance

on the Miramar property, to Lucius O. Hamilton and his wife, Fannie Hamilton. It is alleged on information and belief that said note and mortgage were held and owned by Hamilton and his wife by entireties, and that Mrs. Hamilton died January 20, 1930.

From November 26, 1931, the Comptroller of the State of Florida took over the Trust Company of Florida and appointed J. H. Therrell, as Liquidator. Therrell qualified and assumed his duties as such Liquidator and went into possession and occupancy of the hotel property involved in this cause, deriving and receiving the rents, income and profits therefrom.

That on July 21, 1932, the said Lucius O. Hamilton, assignee of said mortgage and note, began foreclosure proceedings against Marion Mortgage Company, in its individual and corporate capacity; the Trust Company of Florida in its individual and corporate capacity; and the Trust Company of Florida, as Trustee; J. H. Therrell, as Liquidator of said Trust Company of Florida, and J. H. Therrell, as Liquidator of said Trust Company of Florida, as Trustee. Decree *pro confesso* was taken against the Marion Mortgage Company. The Trust Company of Florida in its corporate capacity and as Trustee, and Therrell, as Liquidator of the Trust Company of Florida in its corporate capacity, and as Trustee, filed their joint and several answers to the bill of complaint in said cause. During pendency of said chancery cause M. A. Smith was appointed as Liquidator to succeed Therrell, thereupon the Court entered an order substituting him as party defendant in place of Therrell. After taking of testimony and the submission of proofs, the court on June 29, 1933, entered a final decree in which it was found that the principal mortgage debt together with interest thereon, taxes paid by complainant, attorneys' fees, and master's fees amounted to $52,149.66. Complainant, Lucius O.

Hamilton, bought the property at master's sale for $55,-000.00. The court confirmed the sale and ordered the master to make disbursement of funds, and to execute a master's deed to said Lucius O. Hamilton. Hamilton duly recorded the master's deed, and went into possession and occupancy of said property and is deriving and receiving the rents, income and profits therefrom. It is alleged that the master's deed does not purport to and did not in anywise bind or affect the equitable title of the beneficial owners and that they did not authorize or consent to the execution of said master's deed.

It is alleged that none of the equitable and beneficial owners of said property were made parties defendant in the said chancery cause, that none of them appeared therein, and that said equitable and beneficial owners were necessary and indispensable parties defendant. None of the equitable and beneficial owners were represented in said cause by any person or party qualified or authorized to represent them therein and that said final decree is, as to said equitable and beneficial owners, null and void and does not in anywise bind them or their equitable title to said property and their said property is still impressed with the trust in favor of, and for use and benefit of, said equitable and beneficial owners. It is alleged that because of matters and things thereinbefore alleged in the bill of complaint that the bid made by Marion Mortgage Company in its individual corporate capacity and the taking of legal title to said property in its individual corporate capacity, the execution of the mortgage in its individual corporate capacity to secure payment of said pretended indebtedness, the execution of warranty deed to Trust Company of Florida as trustee by Marion Mortgage Company in its individual corporate capacity, and the assignments of the note and mortgage to Lucius O. Hamilton, all were steps in, and parts of, a

wrongful and unconscionable deprivation and diversion of the property rights of the equitable and beneficial owners from them and were parts of a fraudulent scheme executed in bad faith by Marion Mortgage Company, Trust Company of Florida and Northern Investment Company by their respective managing officers for the purpose of deriving financial gain at the expense of said beneficial owners.

It is further alleged that Lucius O. Hamilton and his wife did not pay full face value of said promissory note, but paid a sum substantially less and they, as assignees, at the time of the assignments had constructive notice from the records in the original foreclosure suit of the powers and authority that could properly be exercised by Marion Mortgage Company, as holder of legal title to the real property, as trustee for and in behalf of the beneficial owners.

That because of the matters hereinabove alleged said beneficial and equitable owners are still the beneficial owners of the equitable title to said property and Lucius O. Hamilton is not holder of the legal title and is wrongfully holding possession of said property and should be ousted from possession by order of court and required to account to said beneficial owners for rents and profits received by him from said property.

It is alleged that Miramar Hotel property is worth in excess of $125,000.00, and could easily have been rented or leased for a sum in excess of the necessary expenses of upkeep and that a receiver should be appointed to take possession of the property, pending final determination of this cause.

It is alleged upon information and belief that a large portion of the original bond issue of $150,000.00 had been paid prior to the original foreclosure suit of Marion Mortgage Company, and a proper accounting is asked so that it can be accurately determined what proportionate equi-

table and beneficial interest each of the present beneficial owners has in the said real. property.

.That the plaintiffs herein, as receivers for certain bond-holders committees. hold title, by virtue of the order appointing them as receivers, as an asset of their receivership estate, to the equitable and beneficial estate acquired by L. M. Jackson, and five other named persons, under and by virtue of the master's deed to the Marion Mortgage Company, and that by virtue of an order of the court, recorded in chancery order Book 333 at page 431, the plaintiffs herein, as such receivers, were and are authorized to prosecute this suit.

Allegations are made for the purpose of making this a class suit.

The prayers of the bill, after asking that, process issue to said defendants, and that a Receiver be appointed pending final determination of the cause, seek to have the court decree that the Marion Mortgage Company, by the master's deed in the original foreclosure suit, only took the legal title for the bondholders, the equitable owners; that the promissory note and mortgage executed by Marion Mortgage Company to Northern Investment Company be decreed null and void and of no force or effect as to bondholders, and that such instruments do not encumber the equitable title of the beneficial owners; that the assignment to L. O. Hamilton be decreed void as to the bondholders as the equitable owners; that the Trust Company of Florida be decreed to have become a trustee *de son tort* by the conveyance from Marion Mortgage Company and thereby was incompetent to sell the property or give discharges for rents, etc.; that M. A. Smith, as Liquidator, took no greater rights than those held by Trust Company of. Florida; that the foreclosure decree and master's deed issued to Hamilton be decreed of no force and effect as to the beneficial owners and that

their equitable ownership was not affected thereby; that Hamilton be decreed as wrongfully in possession and be ousted and required to account for rents and profits; that the names and proportionate beneficial interest of the bondholders be determined as being the present equitable owners; that M. A. Smith, as Liquidator, be divested of the legal title that he now holds as trustee *de son tort,* and that the court appoint a trustee to hold title and manage the property for the equitable owners until the trust can be terminated; and that "this Court grant and accord to the said Lucius O. Hamilton such equitable relief and remedies in this cause as to this Court shall seem meet, just, proper and appropriate."

The following exhibits are attached to the bill of complaint: (a) A copy of decree appointing Flowers and McElya receivers for certain bondholders committees, in the case of Palmer, *et al., v.* Edmunds, *et al.;* (b) order in same case authorizing receivers to institute and prosecute suits; (c) trust deed executed by Miramar Hotel Company to G. L. Miller Bond and Mortgage Company; (d) master's deed to Marion Mortgage Company; (e) note for $40,000.00 executed by Marion Mortgage Company to Northern Investment Company; (f) mortgage securing above note; (g) deed of Miramar property subject to mortgage, executed by Marion Mortgage Company to Trust Company of Florida, as Trustee; (h) master's deed to Lucius O. Hamilton.

The bill in this case, if intended as a bill of review or bill in the nature of bill of review, is defective because copies of the pleadings and proceedings leading up to the final decree attacked are not embraced within or made a part of the bill of complaint as exhibits thereto. Unless this is done, this Court cannot be required to review its former decree. Furthermore, special permission must be obtained to file such a bill.

If it be considered as an original bill to attack on the ground of fraud a final decree, valid on its face, and which has become final and absolute, the bill must allege facts which would show extrinsic fraud in the procurement of the decree. See Gamble v. Gamble Holding Corporation, 120 Fla. 340, 162 So. 886; Polk v. Chase National Company, 120 Fla. 243, 162 So. 521. The allegations of fraud contained in this bill are so general in their nature that it is difficult to ascertain whether the pleader relies upon extrinsic or intrinsic fraud. The general rule is that where fraud is charged, the facts constituting the alleged fraud should be alleged, whether the pleading be a bill in equity or a declaration at law. And this rule also obtains as to defensive pleadings alleging fraud.

The bill is also inconsistent in its averments, in that it charges that, when the Marion Mortgage Company conveyed the property involved to Trust Company of Florida as Trustee, a, dry, naked, passive trust was created. If this be true, then the effect under the statute of uses would be to vest both the legal and equitable title in the beneficiaries of the trust. But there are other allegations in the bill, upon which the arguments in appellee's brief are largely based, to the effect that the execution of this conveyance resulted in creating a resulting trust, thus vesting the legal title in the Trust Company of Florida and the equitable ownership of the property in the bondholders.

As regards the nature of the trust, under a quite similar state of facts, this court in the case of Smith v. Mass. Mutual Life Ins. Co., 116 Fla. 390, 156 So. 498, 95 A. L. R 508, had this to say:

"The trust involved in this case undoubtedly began as an express trust under the trust deed or mortgage securing a bond issue on the Cortez Hotel property. Whether this express trust ended when the decree of foreclosure was en-

tered, and a new express trust arose under the master's deed issued under the decree confirming the sale and the motion for confirmation with power in the trustee to mortgage, or an implied trust in the nature of a resulting trust arose to which the power to mortgage under the order of confirmation attached, and under which the trustee also had the implied power to mortgage for the preservation of the trust, are interesting questions, which we may not be required to completely answer in this case inasmuch as the appellant practically bases his entire case upon the proposition that the trustee, the Marion Mortgage Company, had no authority whatever to execute the mortgage herein sought to be foreclosed, and our inquiry into these questions need go no further in the present case than to determine the particular question urged by the appellant on this appeal. In this connection we might call attention to the fact that Section 20 of the trust deed, attached as an exhibit to the answer, provided that in case of resignation or removal of the trustee the vacancy may be filled by the holders of the majority of the bonds by written instrument to be filed with the new trustee so named, and that such successor trustee shall have all the powers conferred by said instrument upon the original trustee, and that should the holders of the majority of the bonds fail to name the successor trustee within sixty days, the owner may name such successor. Thus there was no express or implied authority in the Marion Mortgage Company to name its successor as trustee under the trust deed. Nevertheless, it had expressed authority under paragraph five of the trust deed, to purchase the encumbered property at the foreclosure sale and that its receipt should be sufficient to discharge any purchaser for his purchase money. This provision contemplates that the trustee, if it purchased at all, should purchase for the bondholders at such judicial sale. The provisions of the trust deed were

made a part of each bond. If, as was expressly provided, the trustee was authorized to purchase the property at judicial sale, circumstances might become such that it would be its absolute duty to do so, and we think the record in this case, in connection with the judicial notice which we have of the extreme deflation in real estate values which took place after the collapse of the boom of 1925 and the almost total lack of market for real estate which existed in Dade County at the time this sale took place, were such as to make it the duty of the trustee to bid in and purchase the incumbered property at the foreclosure sale for the bondholders. Vested with such express authority, and circumstances being such as to make it the duty of the trustee to bid in the property, it follows that there would be implied authority to do such things as might be necessary to complete the purchase and enter into possession and use of the property for the benefit of the bondholders. One of the things necessary to be done, as shown by the motion for confirmation of the sale, was for the purchaser, the Marion Mortgage Company, to execute the mortgage herein sought to be foreclosed. The court was fully apprised of all of this when it granted the motion and confirmed the sale, and directed the master to convey the property to the Marion Mortgage Company."

The bill alleges that the decree appointing the plaintiffs as receivers of the three bondholders' committees gave them the powers, authorities, rights and obligations conferred upon the said committees under or in accordance with certain deposit agreements existing between certain bondholders, certain certificate holders, certain beneficial ownership certificate holders and certain other persons bound by said deposit agreements, but the bill does not allege what powers, authority, rights, duties and obligations were conferred on the committees by said deposit agreements. This is a fatal defect in the bill. The receivers have no more

powei and authority than the bondholders committees possessed; they can enforce only the rights of the bondholders committees. The court could not confer upon the receivers any greater or different powers than the committees held under such deposit agreements. There is no allegation in the bill which affirmatively shows what interest said committees had, if any, in any of the bonds or beneficial ownership certificates deposited with such committees under the deposit agreement. Nor is this omission from the bill cured by the allegation that the court made an order authorizing the plaintiffs as receivers to institute this suit. This order necessarily implied that such bill as they might file would contain equity, and that it would allege what the depositors' committees would be required to allege if they were instituting the suit. It is elementary that a bill in equity must show the interest or title of the complainants in the subject matter of the suit and that they have the right to sue the defendants thereon.

In another paragraph of the bill it is alleged that among the equitable and beneficial owners of said real property who became such at the time of the acquisition by the Marion Mortgage Company of the legal title to such property as trustees for the holders of the outstanding bonds, were L. M. Jackson and five other named persons, and that under the court's order, the plaintiffs herein as such receivers hold title as an asset of their receivership estate to the equitable and beneficial estate acquired by each of said persons, and that by order of the court the plaintiffs were authorized to institute this suit for the enforcement and protection of their said title to said equitable and beneficial estate. It is not alleged that Jackson and other beneficiaries referred to deposited their bonds or other securities with any of said committees or that such committees ever came into possession or control of said securities. The allegation that

the plaintiffs hold title as an asset of their receivership estate to the beneficial estate acquired by Jackson and the other beneficiaries named is an allegation of a conclusion of the pleader. It fails to show on what the bondholders' committees, for which they are receivers, based these alleged rights. The document or writing on which plaintiffs base their claim of title should be pleaded. The general rule is that "a receiver takes the rights, causes and remedies which were in the corporation, individual or estate whose receiver he is, or which were available to those whose interests he was appointed to represent." 53 C. J. 324. "A receiver has no right to property which does not belong to the individual or corporation over which he was appointed." 53 C. J. 99.

Therefore, the bill should have shown affirmatively in what capacity the committee or committees held the bonds or beneficial ownership certificates, that is, whether they were assigned to them as security, or in such form as to pass absolute ownership, or if by depositors' agreements, what those agreements provided and what rights the bondholders committees possessed under such agreements. Unless a bill of complaint clearly shows the interest of the plaintiff, and his right to sue, the bill is without equity.

One of the prayers of the bill is that the mortgage made by the Marion Mortgage Company to Northern Investment Company and assigned by it to Lucius O. Hamilton be declared null and void, and that the decree of foreclosure of said mortgage and the master's deed issued to Hamilton be declared of no force and effect as to the beneficial owners and that Hamilton be ousted from possession and required to account for the rents and profits, and that M. A. Smith as Liquidator be deprived of the legal title which he holds "as trustee *de son tort.*" There is no specific offer to do equity, but the bill prays that the court grant Hamilton such

equitable relief and remedies in the cause as to the court shall seem meet and appropriate.

In the recent case of George L. Griley v. Marion Mortgage Company, 132 Fla. 299, 182 So. 297, this Court was considering another mortgage foreclosure suit in which the Marion Mortgage Company, as trustee, after foreclosing on certain trust properties in behalf of the bondholders, executed a mortgage, similar to the mortgage held by Lucius O. Hamilton, on the trust properties. G. L. Griley, the holder of the mortgage, attempted to foreclose his mortgage. The court found that testimony taken before the master showed that at the time the note and mortgage were executed and sold to Griley, the trustee had in his possession sufficient funds to protect and administer the trust property, that the trust property was in a good state of repair and no taxes were due on it, and that Griley was not an innocent purchaser in due course. In that case this Court directed that the Chancellor should only allow the mortgage to be foreclosed for such portion of the money loaned thereon as was used in good faith to pay any legitimate expenses for operating the trust, including money spent to save the trust property from dissipation, or received from the proceeds of the mortgage by the beneficiaries of the trust in dividends or betterments.

The 9th question propounded by appellants is as follows: "When a trustee purchases, at foreclosure sale under a trust deed, the trust property for the benefit of the bondholders, has such trustee power to mortgage the trust property for the preservation of the trust, and can such mortgage be ratified by the beneficiaries by acquiescence over six years of time, and does a bill of complaint contain equity which fails to allege any reason why such mortgage could not be executed or why it was not ratified by the beneficiaries?"

We hardly think this question is applicable to the bill as framed. In passing upon the equity of the bill, we cannot. of course, consider the allegations of fact contained in the answer as to acquiescence and estoppel, etc. We are mindful of the principles laid down by this Court in the case of Smith v. Mass. Mutual Life Ins. Co., *supra*, and we have no intention of departing therefrom, but the allegations of this bill present a different state of facts from those which were passed on in the cited case. We are here passing only upon the motions to dismiss the bill and to strike certain portions thereof. In doing so, we cannot consider the allegations of the answer.

The same observation would apply to the 10th question propounded by appellants.

Aside from certain inconsistencies and irregularities pointed out above, the motion to dismiss the bill for want of equity should have been granted because of the failure of the bill to affirmatively show definitely what interest said bondholders committees, of which the appellees are receivers, had in the bonds or beneficial ownership certificates deposited with such committees, and the failure to show the terms and conditions contained in said deposit agreements. Without this showing, there is no satisfactory showing that said receivers had the right to maintain said bill.

No reversible error appears by reason of the denial of the motions to strike. But for the reasons above pointed out, the order of the court below denying the motion of the defendants to dismiss the bill for want of equity must be reversed, with permission, however, to grant to the plaintiffs in the court below leave to amend the bill if application to that end be seasonably made.

Reversed and remanded with directions.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

TERRELL, J., concurs in the opinion and judgment.

ELLIS, C. J., and BUFORD, J., dissent.

BUFORD, J. (dissenting).—I think the bill contained sufficient equity to withstand motion to dismiss and I also think the allegations of the bill sufficiently show a justiciable interest in the complainants sufficient to authorize them to maintain the suit. Sufficient ultimate facts are pleaded in this regard and they should not be required to plead the evidence which will be required to show the existence of such ultimate facts.