ADAM G. ADAMS, *et al.*, v. LOUISE LAFONTISEE FIELDING

4 So. (2nd) 678

En Banc

Opinion Filed November 21, 1941

554

*Elliott Adams,* for Appellants;

*T. E. Duncan,* for Appellee;

*J. Tom Watson,* Attorney General, and *Tiffany Turnbull,* Special Assistant Attorney General, for *Amicus Curiae.*

PER CURIAM.—Appellee on December 29, 1939, filed a sworn bill of complaint in the Circuit Court of Alachua County, Florida, to quiet her title to certain lands, naming, *inter alia,* the appellants herein, Adam G. Adams, W. T. Roberts, George P. Street and Graves Investment Co., as defendants having "some interest in" certain tax sale certificates issued and sold on the property involved by the Alachua County Tax Collector for the years 1935, 1936, 1937 and 1938, which certificates were sought to be declared null and void as a cloud on the appellee's title to the property. The bill alleged that the residences of the appellants were unknown. Summons was issued in the cause on the day the bill was filed, and on that same day a return was made by the sheriff to the effect that the summons was unexecuted because of the failure of the defendant corporation to elect officers or appoint agents who were known and "because none of the said named other defendants could be found in Alachua County, Florida." Still, on the same day, an order for publication was entered by the court requiring the defendants to "defend said action, . . . on or before Monday, the fifth day of February, A. D. 1940," with provisions for the publication of the order. This order for publication and the sheriff's return were filed Jan. 15, 1940. Proof of publication and the

clerk's certificate were duly filed February 5, 1940, and a decree *pro confesso* was that day entered against the appellants. On February 8, 1940, a final decree was entered granting the relief prayed by appellee and the tax certificates involved were held to be null and void and cancelled as a cloud on appellee's title to the property.

On July 3, 1940, appellants filed a bill of review which recited in substance the proceedings theretofore had in the cause and then alleged the tax certificates involved to be valid ones, and that the decree *pro confesso* and final decree should be vacated, because the service by publication was improper and based on insufficient "due diligence" in the search for the appellants and the attempted execution of the summons. Appellee moved to dismiss this bill of review and the motion was denied; whereupon a petition for rehearing of the motion was granted and, upon the rehearing, the original motion was granted and the bill of review was dismissed. It is from this order of dismissal of the bill of review that appellants appeal. The State of Florida was allowed to file its brief of appeal as *amicus curiae*.

The first question necessary to be considered is one raised by appellee to the effect that a bill of review is insufficient in form where it does not recite verbatim, or include within it by exhibit, the record of the pleadings. The bill of review here set out in substance the original bill of complaint, the record of the proceedings by which the contested service was had, the decree *pro confesso* and the final decree thereon.

Generally, there seems to be considerable conflict as to whether a substantial recital of the record is sufficient or whether a *haec verba* recital is required.

See 21 C.J. 897 (page 740). The rule in Florida, however, is clearly stated in Hamilton v. Flowers, 134 Fla. 328, 183 Sou. 811, where this Court said:

"The bill in this case, if intended as a bill of review or bill in the nature of bill of review, is defective because copies of the pleadings and proceedings leading up to the final decree attacked are not embraced within or made a part of the bill of complaint as exhibits thereto. Unless this is done, the court cannot be required to review its former decree."

This case is consistent with the previous case of Whilldin v. Krantz, 89 Fla. 33, 103 Sou. 193, which held to the same effect, although the language used there was more general. In view, however, of what will be hereinafter said, we shall not recede from what we have held in this regard, *supra*, and hold the allegations of the bill as to the record in the former suit sufficient.

It might be stated in this connection that in several cases this Court has passed on and upheld the validity of bills of review which set out only the substance of the record, although this question of form was not in those cases raised and, therefore, not specifically ruled on. Further, under many of the more recent cases in this Country, the rule seems to require only sufficient allegation of the prior proceedings to enable the Court to properly consider the merits of the bill of review in the particular case. Although it is true that the strict rule announced in Florida is the traditional chancery rule on this question (See Story's Equity Pleading, 10 ed., Secs. 407, 420; Gibson's Suits in Chancery, No. 1251), it would seem unduly harsh when it is remembered that under the 1931 Chancery Act technical forms are abolished; substance alone is

of the essence, and more lenient informality seems to be urged in pleading. It should also be remembered that the defendant to the bill of review is always entitled in his answer to set up any facts relating to or parts of the proceedings or record omitted in the bill. Freed from the obligation of conforming with the arbitrary rule of the Flowers case, *supra*, the bill here seems amply sufficient in alleging *substantially* the proceedings necessary to be considered for an adjudication of the bill.

Another question argued here is that the court below had, and could have had, no jurisdiction of these appellants because of the defects in the service of process upon them. It is alleged in the bill of review: that all four appellants were served, under the statutes, by publication of notice; that the order for this publication was entered on the same day the bill of complaint was filed and the summons in chancery issued and returned unexecuted by the sheriff; and that the return of the sheriff was not filed for record until January 15, 1940, more than two weeks after the entry of the order for publication. The bill of review also alleges that because appellee could have ascertained the address of appellants Roberts and Street from either or both the Tax Collector and the Clerk of the Circuit Court of Alachua County, both of whom knew the address of the named appellants because of correspondence with them in regard to many tax certificates bought by those appellants, the service of notice by publication did not give the court jurisdiction over them. These allegations were sufficient to show lack of the due dilligence alleged in the original bill of complaint, upon which the order of publication was issued, and therefore the bill of re-

view would not have been dismissed on this account. See Klinger v. Milton Holding Co., 136 Fla. 50, 186 Sou. 526.

The bill of review alleges that because the appellant corporation filed its annual return to the Secretary of State of the State of Florida as of July 1, 1939, which return showed the address of the corporation to be 1050 Seybold Building, Miami, Florida, and showed that the appellant Adams was an officer of the corporation, and because the address of both the corporation and Adams was listed in the telephone and city directories of Miami, Florida, the service of notice by publication did not give the court jurisdiction over them because of a lack of due diligence to ascertain their residences. These allegations were also sufficient to show lack of due diligence by appellee, as required by the statute upon which the publication of notice was ordered (Sec. 2609 R.G.S., 4256 C.G.L.,) and the bill of review should not have been dismissed on this ground. See Smetal Corp. v. West Lake Investment Co., 126 Fla. 595, 172 Sou. 59. See also Balian v. Wekiwa Ranch, 97 Fla. 180, 122 Sou. 59, which is the controlling case in this State as to the sufficiency of due diligence exercised to ascertain the whereabouts of defendants to a suit where an oath is made that such whereabouts are "unknown," upon which is issued an order for the publication of notice.

The record shows that summons in chancery was issued directed to Mary E. Clark and Adam G. Adams and W. T. Roberts and Geo. P. Street individually, and Graves Investment Company, a copartnership composed of Adam G. Adams, W. T. Roberts, Geo. P. Street and _____ and _____, whose names are unknown, and Graves Investment

Company, a corporation, on the 29th day of December, 1939.

The record shows the following:

"On the 29th day of December A. D. 1939, the Sheriff of Alachua County made return of the Summons in Chancery, which was filed in the office of the Clerk of the Circuit Court on the 15th day of January, A. D. 1940, in words and figures as follows:

"The within summons in chancery came to hand in Alachua County, Florida, on the 29th day of December, 1939, and the same is returned unexecuted upon Graves Investment Company, a corporation, owing to the failure of said corporation to elect officers or appoint agents, and because the officers or agents of said corporation are unknown, and same is returned unexecuted as to all other defendants named in said summons, because none of the said named other defendants could be found in Alachua County, Florida.

"This December 29th, 1939.

"J. P. Ramsey,
as Sheriff of Alachua County,
by F. M. Sexton
Deputy Sheriff of said County."

Order for service by publication was not filed and recorded until the 15th day of January, 1940. So it appears that the Sheriff's return had not been filed until more than two weeks after the order for service by publication was made.

Nowhere in either the summons or return is it shown whether the corporation, Graves Investment Company, is a Florida corporation or a foreign corporation which had done business in this State.

The bill of complaint here under consideration is a

direct attack on the validity of the proceedings in the former suit.

Taking the allegations of the bill of review to be true, as they must be taken on motion to dismiss, they set up sufficient facts to warrant the granting of the relief prayed and vacating the decree *pro confesso* and final decree entered on the original bill on the showing of insufficient diligence in endeavoring to ascertain the whereabouts of the appellants before giving them notice by publication only.

The remaining question, it would appear, can not be directly answered in this appeal because appellee has filed no answer to the bill and this question involves the merits of the cause. It is necessary in a bill of review for error on the record (such as the one presently before the court), however, to allege sufficient facts to show that error does exist on the face of the record. From the following alleged facts in the bill of review it should, therefore, be determined whether or not the bill is sufficient in this regard.

Appellee Louise LaFontisee Fielding, owns the property here involved, and has owned it for sometime prior to the assessment of the taxes for the years 1935, 1936, 1937 and 1938. She did not make a return to the tax assessor for this property, as is required by statute (917 C.G.L. 1927), but on each of these years her husband did file a claim for homestead exemption, under Section 897 (6) C.G.L. Per. Supp., as his homestead" . . . the title to which is vested (*sic*) Louise Fielding . . .". The tax assessor assessed the property in the name of Thomas W. Fielding, appellee's husband, and when the taxes were not paid, sold the tax certificates to appellants Robert and Street on different years respectively. Appellee's claim is that her

husband's filing of claim for homestead exemption was a "return" as required by 917 C.G.L. and since the tax asessor did not assess the property in her name after such return, the assesment and any tax sale certificates showing her husband as owner, sold thereon are invalid, under Sec. 928 C.GG.L., and subject to cancellation. Section 928 C.G.L. reads as follows:

"The county tax assessors of the State of Florida are hereby authorized in all cases where land has not been returned for assessment on or before the first day of April each year, as required by law, to assess such land not returned for taxation, in the name of said party as for the preceding year, or he may assess such land as unknown, the use of either of these methods in designating the ownership of such land shall be valid; Provided that in cases in which lands are not returned for taxation an erroneous statement of the owner of such land or entry on the assessment roll shall not invalidate the assessment.'"

Appellee's contention is that since the statute states that where no return is made an erroneous statement of the owner will not invalidate the assesment, then it follows that where a return *is* made an erroneous statement of the owner *will* invalidate the assessment, and that she did return her property for taxation by the filing of the claim for homestead exemption filed by her husband.

It is necessary to look to some other statutes in the determination of this question. Sec. 1008 C. G. L., 1927, reads as follows:

"No decree shall be made by any court in a suit brought by or on behalf of any land owner to enjoin any tax sale or to set aside or cancel any tax certifi-

cate in the State of Florida until such owner shall have paid to the tax collector of the county where the property is assessable the full amount of the taxes which could have been lawfully assessed against the property involved for the period covered by the assessment complained of, *whether such real estate shall have been returned for assessment by the owner thereof or not.* In all such cases the court shall ascertain and determine and by decree fix the amount of such tax to be paid by the owner." (Italics supplied.)

See also Section 894, C.G.L., and Section 1009 (1) Per. Supp.

Appellee contends that a tax certificate issued on sale for non-payment of taxes on land after a return had been duly made by the owner, but assessed in the name of the husband of the owner, may be cancelled in an equity suit. The contention, however, is not tenable here because, as is alleged, there was no return but only a claim for homestead exemption. Aside from this, however, Section 1008, *supra,* requires the owner of the property seeking to cancel tax certificates outstanding but alleged to be invalid to pay those taxes legally due which could have been lawfully assessed, "whether such real estate shall have been returned for assessment by the owner thereof or not." The original bill here did not make this offer to do equity required by the statute and the final decree vacating the certificates made no provision for the payment of any amount which "could have been lawfully assessed." It was clearly error to cancel the certificates in this manner.

As was said in Palbicke v. Hanover Nat. Corp., 120 Fla. 229, 162 So. 694 (although it is *obiter dictum* for

the reason that in that case no return had been made by the owner) :

"Section 109 of Chapter 9945, Acts of 1923, Special Laws (the city charter of West Palm Beach), requires the city tax assessment roll to be prepared in substantial conformity with the laws of the State governing State and county assessments, the city commission to be a board of equalization. This section of the city charter construed in connection with Chapter 10038, Acts 1925, Laws of Florida, makes it an immaterial irregularity, not going to the enforceability of unredeemed tax certificates sought to be foreclosed, that the tax assessor made an erroneous statement on the tax rolls of the ownership of the assessed land, so long as the land itself was correctly described as an assessable parcel."

See also Dewhurst v. City of St. Augustine, 91 Fla. 314, 107 So. 689; Ranger Realty Co. v. Hefty, 112 Fla. 645, 152 So. 439; Devane v. Leatherman, 113 Fla. 216, 151 So. 530; City of Ft. Myers v. Heitman (now pending in this court).

However, this case need not turn solely on the last question on the validity and sufficiency of the allegations of the bill of review as going to the merits of the cause, for it does not appear that a return was in fact here made. Appellee's only claim of having made a return is that her husband filed claim for homestead exemption of the property on the years involved. A perusal of the statutes requiring a return to be made on property for taxation and giving the tax assessor wide, but clearly defined, latitude of action where no return is made and making any error of his as to proper ownership in such case harmless (Sections 894, 917, 922, and 928 C.G.L. 1927) and of those

sections (897 [2], 897 [6] and 897 [7] C.G.L., Per Supp.) providing for homestead exemption from taxation and the method and requirements for claiming same, makes it obvious that a mere claim for homestead exemption, which must be filed to entitle applicant to it, was never intended to serve at the same time as a return of the property for taxation so as to negative the provisions of Section 928, *supra,* validating assessments where an erroneous statement of ownership is made after no return has been filed.

The interpretation of the homstead exemption statutes here sought by appellee would create an ambiguity in determining the proper method of making returns of property for taxation, although that method had been established and in use for several years prior to the passage of the exemption statutes.

"Prior Acts may be resorted to, to solve but not to create ambiguity in statute." McCamy v. Payne, 94 Fla. 210, 116 Sou. 267, vacating decree on rehearing, 94 Fla. 209, 113 Sou. 712.

No return having been made of the property for the years involved, the case thus comes squarely within the provisions of Section 928, *supra,* and its interpretation in Palbicke v. Hanover Nat. Corp., *supra,* so that the misstatement of the ownership of the property by the tax assessor was an "immaterial irregularity."

It, therefore, appears that on the merits of this cause, as alleged in the bill of review, appellee is not entitled to the cancellation of the tax sale certificates sought and granted in the original suit. The bill of review states a case of error apparent on the record and should not have been dismissed.

The decree is reversed and the cause remanded for

further proceedings not inconsistent with the views herein expressed.

So ordered.

BROWN, C. J., WHITFIELD, TERRELL, BUFORD, THOMAS and ADAMS, J. J., concur.

CHAPMAN, J., not participating.