633 So.2d 521 (1994)
STATE of Florida, DEPARTMENT OF INSURANCE, as Receiver of Atlantic General Life Insurance Company, Appellant,
v.
William B. BLACKBURN, Pamela Jeanne Turbow Rush, Susan Lynn Boswell, Tower Investment Group, Inc., Gulf Coast Aircraft Charter, Inc., Blackburn & Company and Bay Harbour Investments, Inc., Appellees.
No. 92-04449.
District Court of Appeal of Florida, Second District.
March 9, 1994.
*522 Joseph L. Rebak, Thomas C. Tew and Matias R. Dorta of Tew & Garcia-Pedrosa, Miami, for appellant.
W. Donald Cox and Javier M. Guzman of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, for appellees.
RYDER, Acting Chief Judge.
The State of Florida Department of Insurance, as Receiver of Atlantic General Life Insurance Company (AGL), challenges the trial court's order dismissing with prejudice its sixteen-count complaint as to all defendants in this action involving claims of breach of fiduciary duty, waste of corporate assets, civil theft and conspiracy. Because we conclude that the Department may be able to state a claim against appellees, we reverse to allow the Department the opportunity to amend.
On September 1, 1992, the Department of Insurance, as the Receiver for AGL, filed a complaint against the appellees. AGL was incorporated and licensed as an insurer in the State of Florida in 1985. The complaint alleged that from that time until August 1988, it was a wholly owned subsidiary of Guarantee Security Life Insurance Company (GSL). GSL was placed into receivership on August 12, 1991, under the provisions of chapter 631, Florida Statutes (1991). During that period, William B. Blackburn was an officer and director of GSL and the president of AGL.
In 1988, as part of an agreement for Blackburn to sever his association and ownership interest in GSL and its parent company, Transmark USA, Blackburn acquired the stock of AGL from GSL in a less-than-armslength transaction. Prior to the transfer of AGL's stock to Blackburn, GSL made a cash contribution to AGL of $1.7 million which increased AGL's total capital surplus to approximately $3.3 million. GSL also transferred certain of its reserves and cash, totalling approximately $20 million to AGL under a coinsurance agreement. In August 1988, Blackburn allegedly purchased stock of AGL for $3.3 million. From August 1988 until March 10, 1992, when AGL was adjudicated insolvent and placed into receivership, AGL was the wholly-owned subsidiary of Blackburn & Co. Mr. Blackburn was an officer, director and shareholder of Blackburn & Co. and Pamela Rush was an officer and director of that company. During this time period, Blackburn was the chairman, president and a director of AGL, Rush was the secretary, treasurer and a director of AGL and Susan Boswell was the vice-president and a director of AGL. Blackburn, Rush and Boswell allegedly engaged in a course of conduct and series of transactions whereby they methodically depleted AGL's assets to enrich themselves.
From August 1988 through March 10, 1992, all administrative and insurance related activities of AGL were performed by GSL pursuant to the coinsurance agreement. From 1988 through 1991, all investment services relating to AGL's assets were handled by two entities owned and controlled by Blackburn, namely, Blackburn Management and Tower Investment Group, Inc. For the four years that AGL was under the management of Blackburn, Rush and Boswell, it had approximately $400,000 in total premium income, all of which was derived from seven insurance policies sold by AGL prior to August 1988 and from AGL's coinsurance agreement with GSL. Despite AGL's lack of activity during this time period, Blackburn, Rush and Boswell caused AGL to incur expenses, salaries, fees and benefits in excess *523 of $1.5 million, in addition to the fees paid by AGL to GSL, Blackburn Management and Tower. These expenses were allegedly exorbitant, wasteful, unnecessary and duplicative since GSL, Blackburn Management and Tower were performing all the services necessary for AGL's business.
Additionally, Blackburn, Rush and Boswell caused AGL to enter into numerous contractual arrangements and transactions with entities controlled by Blackburn for the alleged purpose of depleting AGL's assets and enriching themselves. These contractual arrangements and transactions included the following:
(1) AGL made twenty-five payments totalling $325,000 to Gulf Coast Aircraft Charter, Inc. for the use of an aircraft even though AGL did not use or need an aircraft. Gulf Coast was owned by Blackburn and Rush was a director and executive officer of Gulf Coast;
(2) AGL purchased for $2,342,000 worthless preferred stock of Blevins Concession Supply Company, Inc. from Bay Harbour Capital, Inc. owned by Blackburn. Rush was a director and executive director of Bay Harbour Capital. Additionally, Blackburn was a majority shareholder and a director of Blevins and Rush was a director and secretary of Blevins.
(3) AGL purchased for $1.2 million worthless preferred stock of Hallmark Packaging Products, Inc. from Bay Harbour Investment Inc. owned by Blackburn. Rush was a director and executive officer of Hallmark. Additionally. Blackburn was a majority shareholder, director and executive officer of Hallmark and Rush was an executive officer of Hallmark.
(4) Blackburn, Rush and Boswell caused AGL to purchase Hallmark notes of $1,558,000, even though at the time, Blackburn and Rush knew that the notes were worthless;
(5) Blackburn & Co. purchased an office building from an unrelated third party for $1 million and sold it that same day to AGL for $1,350,000 even though AGL conducted virtually no insurance business and did not need the building;
(6) From March 1989 through December 1989, after Tower assumed performance of the services previously performed by Blackburn Management, Blackburn, Rush and Boswell caused AGL to pay Blackburn Management in excess of $440,000 even though they allegedly knew that Blackburn Management was not providing any services which were beneficial to AGL. At that time, Blackburn owned Blackburn Management and Rush was a director and executive officer of that company.
On March 10, 1992, AGL was adjudicated insolvent. The consent order of liquidation for AGL appointed the Department of Insurance as Receiver of AGL pursuant to chapter 631.
All of the appellees moved to dismiss the complaint. Without the benefit of appellant's response to the amended motion to dismiss, the trial court entered its order stating that "[b]y virtue of William B. Blackburn's status as sole shareholder and the Department's status as successor to Atlantic General Life Insurance Company there is no way that this Complaint could be amended to state a cause of action against Defendants." This appeal ensued.
In Counts I through IX and XV of the complaint, the Department asserts claims on behalf of AGL for breach of fiduciary duty, waste of corporate assets, civil theft and other civil remedies for criminal practices allegedly engaged in by its officers and directors, including RICO claims. Counts X through XIV and XVI assert claims under sections 631.261(1) and 631.399, Florida Statutes (1991). Counts X and XI demand that payments made to Gulf Coast and Tower by Blackburn, Rush and Boswell be deemed voidable transfers and Counts XII through XIV seek judgment against Gulf Coast, Tower and Blackburn & Co. for transfers prior to the petition for liquidation. The Department seeks in Count XVI to recover from any "affiliate" the amount or value of distributions other than stock dividends made to Gulf Coast, Blackburn & Co., Bay Harbour Investments and Tower during the five years preceding the petition for liquidation by AGL.
*524 Appellant argues that the trial court erred in limiting its focus to the receiver's role in asserting claims on behalf of the entity in receivership pursuant to section 631.141(2), Florida Statutes (1991). A receiver is also authorized to assert claims under sections 631.261(1), 631.262(2) and 631.399 that belong exclusively to it. These claims can only arise after the receiver is appointed, and, therefore, cannot belong to the entity. Moreover, appellees' counsel acknowledged that the receiver could amend its complaint to recover fraudulent transfers.
The appellees argue that all the entities named in Counts X through XIV and XVI are commercial conduits and are therefore not liable. The commercial conduit rule protects those intermediary transferees that are controlled by the actual intended transferee. See In re Anchorage Marina, Inc., 93 B.R. 686 (Bankr.D.N.D. 1988). The commercial conduit rule to fraudulent transfers is, however, an affirmative defense and cannot support the dismissal of the receiver's complaint with prejudice. Hammonds v. Buckeye Cellulose Corp., 285 So.2d 7 (Fla. 1973). Moreover, the "conduit exception" is equitable in nature and protects innocent transferees. See In re Anchorage Marina at 694. Here, Gulf Coast, Tower and Blackburn & Co. were alleged to be knowing participants and recipients of the fraudulent transfers identified in the complaint.
Appellants argue that all of the elements of a cause of action under section 631.261(1) were pled in Counts X and XI. Section 631.261(1) operates to void transfers made within four months prior to the commencement of any delinquency proceeding with the intent of giving any creditor of the insurer a preference or enabling him to obtain a greater percentage of his debt than any other creditor of the same class.
Appellees contend that Counts X and XI are deficient because they demand recovery from affiliates without establishing or identifying a prejudiced creditor. At a minimum, appellant should be afforded the opportunity to amend the complaint to identify the creditors. We conclude that for the limited purpose of withstanding a motion to dismiss that all of the elements have been adequately pled.
Appellees present a "sole shareholder" argument with respect to Counts I through IX and XV brought by the Department as a successor to the liquidating entity. They argue that a sole shareholder or any number of shareholders owning 100% of the stock among them may transfer that corporation's assets without restrictions unless these transactions prejudice creditors or violate regulatory requirements. L.R. Schmaus Co. v. Comm'r, 406 F.2d 1044, 1045 (7th Cir.1969). Thus, Blackburn, as AGL's sole shareholder, had complete discretion to transfer AGL's assets. Consequently, appellees assert that the receiver's complaint amounts to a claim that Blackburn defrauded himself and such a claim is not actionable as a breach of fiduciary duty, civil theft, fraud or conspiracy. In re Tufts Electronics, 746 F.2d 915, 917 (1st Cir.1984). As a successor, the receiver can only bring causes of action that were possessed by the corporation placed in receivership. Hamilton v. Flowers, 134 Fla. 328, 183 So. 811, 817 (1938). Appellant responds that it could amend the complaint to name Melanie Forlong, Blackburn's former wife, as a joint shareholder of stock of AGL's parent company. Moreover, there may also be other creditors and insurance policyholders who are due money. Thus, the argument fails that allegedly Blackburn is just stealing from himself; not so, other interests are involved.
Appellees also present the argument that they are not liable because the imputation rule operates to impute the officers' and directors' conduct and knowledge to AGL. Here, however, where it is alleged that the agents were acting adversely to the corporation's interests, the knowledge and misconduct of the agent are not imputed to the corporation. Tew v. Chase Manhattan Bank, N.A., 728 F. Supp. 1551 (S.D.Fla. 1990). Furthermore, the imputation rule can only be invoked to protect innocent parties, and it is not available to the person who perpetrated the misconduct sought to be imputed. FDIC v. O'Melveny & Myers, 969 F.2d 744, 751 (9th Cir.1992).
*525 Based upon the foregoing discussion, we conclude that the trial court erred in dismissing the complaint with prejudice without affording the Department the opportunity to amend. We therefore reverse the trial court's order of dismissal and remand for further proceedings.
PARKER, J., and SCHAEFFER, SUSAN F., Associate Judge, concur.