ZACHARY VENEER COMPANY v. F. H. ENGELKEN, and
FREDERICK H. ENGELKIN as Executor of the Last Will
and Testament of Louisiana Gibson Von Engelken de-
ceased, and PENA L. CAVE.

186 So. 813.
Opinion Filed October 18, 1938.
Rehearing Denied November 29, 1938.

*Hilburn & Merryday,* for Appellant;
*MacWilliams & Upchurch,* for Appellees.

BUFORD, J.—The appeal brings for review final decree
which is, in part, as follows:

"1. That the equities of this cause are with the plaintiff, F. H. Engelken, whose name is sometimes written as F. H. Von Engelken, and as Frederick H. Engelken, and as Frederick H. Von Engelken, and that said plaintiff is entitled to a decree of foreclosure and sale.

"2. That the defendant Zachary Veneer Company, a corporation, is trustee *ex maleficio* of the real estate conveyed to it by the defendant, Pena L. Cave, by warranty deed dated August 20th, 1932, and recorded in Deed Book 124, page 157, of the public records of Putnam County, Florida, which deed purports to convey the portion of the mortgaged real estate described as follows: "Situate in Putnam County, Florida, to-wit: Beginning at a concrete monument on the Easterly line of the J. Summeral Grant, Sections Forty-two (42) and forty-five (45), Township Nine (9) South, Range Twenty-seven (27) East, Eight Hundred Eighty-eight and seven tenths (888.7) feet from the Southeast corner of said Grant, run thence northerly along the Easterly line of said Grant Sixteen Hundred Ninety-three (1693) feet to the Northeast corner thereof, marked by a concrete monument; thence Westerly along the Northerly line of said Grant Twenty-five Hundred Ninety-seven (2597) feet to the Northwest corner thereof, marked by a concrete monument; thence South Fifteen (15') minutes West Six Hundred Forty-two (642) feet to a concrete monument; thence South Fifteen (15') minutes West Six Hundred Forty-two (642) feet to a concrete monument; thence South Seventy (70) degrees West eleven Hundred and twelve (1112) feet to the St. Johns River; thence following said River South and East Thirteen Hundred Thirty-three (1333) feet to a concrete monument in the mouth of a branch; thence North 82 degrees and 40' East Eight Hundred Ninety-three (893) feet to a concrete monument; thence North 51 degrees and

14′ East Five Hundred and twenty-one (521) feet to a concrete monument on the West side of the river road; thence North Eighteen and One-half (18½ degrees) degrees West Sixty (60) feet to a concrete monument; thence North 89 degrees and 45′ East Nineteen Hundred Twenty-six (1926) feet to the place of beginning; and all the right, title and interest of the said party of the first part in and to the riparian rights, appertaining or belonging to the said land, containing One Hundred and Thirty-Four (134) acres, more or less, and that said defendant Zachary Veneer Company, a corporation, holds same for the use and benefit of the said plaintiff, F. H. Engelken, to the extent of his right to a mortgage lien thereon, and that said real estate is subject to said plaintiff's lien thereon, and that said plaintiff is entitled to foreclose the said lien.

"3. That there is due the said plaintiff, F. H. Engelken, from the defendant, Pena L. Cave, the following sums:

| | |
|---|---|
| Principal of mortgage indebtedness, | $6,250.00 |
| Interest on principal of mortgage indebtedness from August 30, 1931, at 6 percent per annum | 2,166.48 |
| Total | $8,416.48 |

"4. That there is further due the said plaintiff F. H. Engelken, from the defendant Pena L. Cave a reasonable amount for solicitors' fees for the payment of plaintiff's solicitors for their services herein, and that the sum of $625.00 is hereby found to be a reasonable amount for solicitors' fees, and that there is further due the plaintiff, F. H. Engelken, from the defendant, Pena L. Cave, in addition to said sum of $8,416.48 for principal of said mortgage indebtedness and interest thereon, and said sum of $625.00 for solicitors' fees, the costs and expenses of this

suit, including the fees of the special examiner, and the cost of taking and transcribing the testimony of the plaintiff as allowed herein, and that all of said several sums are secured by the mortgage lien hereby foreclosed, and are liens prior and superior to the rights of each of the defendants herein, by this decree foreclosed, on and against the premises hereinafter ordered to be sold."

The record shows the following salient facts:

In 1924 Pena L. Cave executed a mortgage to Louisiana Gibson Von Engelken to secure four notes in the principal sum of $1250.00 each, and one note in the principal sum of $13,750.00. That the first four notes were payable respectively one, two, three and four years after date and the last was payable five years after date, each bearing interest at rate of $6\frac{1}{2}$ per cent per annum, payable annually.

The mortgage embraced two pieces of property, one piece known as the residence property and the other as the potato farm property. On June 9, 1928, the potato farm property was released from the mortgage to enable Mrs. Cave to sell that property to One J. B. Boaz with the understanding and agreement that she should take a mortgage from Boaz for part of the purchase price and assign that mortgage to Engelken as collateral security for the payment of the balance of the original debt from Cave to Engelken. This mortgage was given to secure one note in the sum of $1250.00 due September 6, 1928 with interest after maturity at the rate of $6\frac{1}{2}$ percent per annum; and a second note was for $576.87 due September 6, 1928, bearing interest after maturity at the rate of $6\frac{1}{2}$ percent, and a third note was for $4978.00 bearing interest after maturity at the rate of 8% per annum, payable June 1, 1929, and the fourth note was for $13,750.00, due September 6, 1929, and bearing interest at $6\frac{1}{2}$% after September 6, 1928.

Mrs. Cave, following her said agreement, assigned the mortgage and notes to Engelken as collateral security.

Boaz died, leaving minor heirs. The mortgage deed securing part of the purchase price of the potato farm property was in default. Mrs. Cave desired to recover title to the property. She negotiated with Engelken looking to having Engelken reassign the Boaz mortgage to her for foreclosure, that she might take title to the property and execute a new mortgage to Engelken. Engelken agreed to this arrangement on condition that Mrs. Cave should pay $2946.00 to cover certain delinquencies and defaults in payment. Mrs. Cave did not have this money available and her son, J. B. Cave, negotiated with Mr. Zachary, President of Zachary Veneer Company, to borrow on his mother's note the sum of $2946.00 to make the payment to Engelken so that Mrs. Cave could foreclose the mortgage, acquire title to the property and make a new mortgage (the terms of which were agreed upon) to Engelken to secure the then balance due on the original debt. The total amount due Engelken at the time this arrangement was made was somewhere near $9,000.00, and, while Zachary denied knowledge of this condition; it must be presumed that this was known, or should have been known to Zachary because the mortgage from Boaz to Mrs. Cave and the assignment thereof from Mrs. Cave to Engelken was a matter of record. All the facts known to Zachary and admitted by him to have been known were quite sufficient to put him on inquiry to ascertain what, if any rights Engleken retained in connection with the large unpaid balance due Engleken by Mrs. Cave.

After the reassignment Mrs. Cave proceeded to foreclose the Boaz mortgage and bought in the property in her own name. Under the facts as above stated, she took title subject to an equitable mortgage in favor of Engelken be-

cause of the application of the maxim that, one will be presumed to do that which equity and good conscience demands, and in equity and good conscience she was required to execute the new mortgage in accordance with her agreement under which she received a reassignment of the original mortgage for the purpose of foreclosure.

Instead of executing the mortgage to Engelken, however, Mrs. Cave executed a warranty deed on August 20, 1932, to Zachary Veneer Company to satisfy the indebtedness evidenced by her note for $2946.00 and another note for the sum of $1000.00.

On February 17, 1934, Engelken filed suit to foreclose the original mortgage on the lands which had not been released therefrom and the equitable mortgage on the lands known as the potato farm, both plots being specifically described in all the conveyances and in the bill of complaint.

Mrs. Cave and Zachary Veneer Company defended the suit, Mrs. Cave denying that there was any agreement on her part to make a new mortgage to Engelken covering the lands known as the potato farm and both Mrs. Cave and Zachary Veneer Company claiming that Zachary Veneer Company was a purchaser for value without notice.

Under the state of the pleadings, we cannot say that the decree entered by the chancellor was unwarranted, or that it is against equity and good conscience.

Under the facts shown by the evidence Zachary Veneer Company might have had the right to be subrogated to the Boaz mortgage as against Mrs. Cave, subject to Engelken's equitable mortgage in the sum of $2946.00, which it had paid to Engelken in discharge of that much of the indebtedness secured by the Boaz mortgage, had it stood on that right, but instead of doing so, it accepted Mrs. Cave's notes as evidence of the debt due from her to Zachary Veneer Company, and later accepted a conveyance from

her to it of the lands here involved in the settlement of the pre-existing debt of $3946.00.

The question arises whether or not (absent those conditions and circumstances surrounding the loan by Zachary Veneer Company to Mrs. Cave, which we hold were sufficient to put the lender on inquiry as to the status of Engelken in connection with the balance due secured by the Boaz Mortgage) Zachary Veneer Company became a purchaser for value when it accepted conveyance of the land in settlement of the debt.

Two views have been laid down and followed in different jurisdictions. One group holds that the purchaser is not protected while the other holds that the purchaser is protected. The cases are irreconcilable.

"In some jurisdictions the rule is laid down that a purchaser of the legal title to property who receives the conveyance thereof merely upon the consideration of a prior indebtedness of the grantor is not entitled to protection as a *bona fide* purchaser of such property without notice of a prior equity of a third person therein, if he is not placed in any worse condition than before." 66 C. J. 1106 (see case cited in note 21 upholding this view). Also see Red River Nat. Bank v. Latimer (Tex.) 110 S. W. (2) 232.

The reason given in the Red River case, *supra,* is that since the antecedent debt remains if the title fails, the grantee is left in no worse condition.

The other view is expressed in 66 C. J. 1107 as follows:

"It is held in some jurisdictions that the absolute extinguishment of an antecedent debt in consideration of a simultaneous transfer of property constitutes the purchaser a purchaser for value to the same extent as if he had paid the money." (See cases cited in note 27 on page 1107 of 66 C. J.)

In 27 R. C. L. Sec. 461, page 697, we find the subject likewise discussed.

"The authorities are in direct conflict on the question whether one who purchases in satisfaction of a preexisting indebtedness is entitled to protection as a *bona fide* purchaser. According to the view taken in many jurisdictions, it is held that as such a purchaser parts with nothing at the time of his purchase, he is not in the proper sense a purchaser for value and, therefore, is not entitled to protection. (Note cites numerous cases). The ground on which this is placed is that the creditor does not pay anything, or actually or irrevocably lose anything except his bargain; and that, if he is compelled to surrender the property, the debt will revive, and he will still have his claim, and will be in no worse condition than he was before. (Note cites Dickerson v. Tillinghast, N. Y., 25 AM. Dec. 528; Padgett v. Lawrence, N. Y., 40 Am. Dec. 232). In other jurisdictions the view is taken that if a conveyance is in discharge and payment of a pre-existing debt, the purchase is not to be regarded as one for value entitling the purchaser to protection if his purchase is otherwise *bona fide*. (Note cites numerous cases) One reason given for this latter view is that where land is conveyed by the owner to another in payment and satisfaction of a debt due from the owner to that other who is ignorant of an equity in the land in favor of a third person, the enforcement of that equity against the land does not revive the indebtedness for the payment and satisfaction of which the land was conveyed. (Note cites Adams v. Vanderbeck, 148 Ind. 92, 45 N. E. 645, 47 N. E. 24)."

From a perusal of the cases cited in Corpus Juris and Ruling Case Law, it appears that they are about evenly divided and it is hard to say which is the majority rule.

This Court in the early case of Glinski and Gilliland v.

Zewadski and wife, 8 Fla. 405, text 411, appears to have adopted the rule that such a purchaser is not a *bona fide* purchaser for value:

"As between parties situated as these are, it will be found that when the cases speak of a purchaser for value they mean to designate one who gives a present considera- tion for the transfer, and not one who bases his title upon a pre-existing debt. The distinction here noted will be found to be abundantly sustained by the decided cases and we think that it is based upon sound equitable principles." (See third headnote in case.)

We are of the opinion that this Court should follow the rule enunciated in this case. For further annotations of this subject, see: L. R. A. 1918 D. page 568; 36 L. R. A. 166; 27 L. R. A. (N. S.) 620; L. R. A. 1918 C. 438; Ann Cas. 1918 A. 112.

Under the state of the entire record, we must hold that the deed from Mrs. Cave to Zachary Veneer Company only conveyed the equitable title held by Mrs. Cave to Zachary Veneer Company and it must stand in her shoes in regard thereto. Zachary Veneer Company may redeem from Engelken's equitable mortgage, or it may have the surplus, if any remains, from the sale of the property after satisfying the decree in favor of Engelken.

The decree should be affirmed and it is so ordered.

Affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL and BROWN, J. J., concur.

CHAPMAN, J., dissents.