E. B. DRUMRIGHT, as Administrator of the Estate of HOWARD DANA, Deceased, and FIRST SAVINGS & TRUST COMPANY OF TAMPA, as Executor of the Estate of ANNA M. DANA, Deceased, v. JESSICA G. DANA.

190 So. 54
Opinion Filed June 23, 1939

*Dickinson & Dickinson* and *Hill & Hill,* for Appellants;
*Frank T. Phillips* and *Maxwell & Cobbey,* for Appellee.

TERRELL, C. J.—Appellants, as complainants, filed their bill of complaint in the Circuit Court praying that three certain conveyances, more particularly described therein, to-wit: two deeds and an assignment of a mortgage executed by Howard Dana and his wife, Anna M. Dana, to the appellee Jessica G. Dana, be set aside and annulled. Appellants are administrators and executors respectively of the

estate of Howard Dana and Anna M. Dana. The defendant answered the bill of complaint denying all the material allegations thereof. Testimony was taken and on final hearing the relief prayed for was denied. This appeal is from the final decree.

Lack of mental capacity and undue influence exerted on Howard Dana are the grounds relied on to set the deeds and assignment aside as invalid. Six grounds are urged for reversing the chancellor on these points but they all turn on what the evidence shows as to the mental capacity of the grantor when he executed the instruments brought in question and whether or not he was actuated by undue influence in so doing.

Howard and Anna M. Dana were two elderly people of modest means who moved from New York to Tampa, Florida, many years ago. Howard Dana died in January, 1937, and Anna M. Dana died in October of the same year. They had two sons, one of whom died about twenty years ago leaving a wife without any children surviving. The second son died a short time prior to his father leaving a wife and three adopted children surviving. The deeds and the assignment of mortgage were executed by Howard Dana and his wife to Jessica G. Dana, the widow of the second son who is the appellee here.

To support their charge of lack of mental capacity on the part of Howard Dana, appellants contend that he had been losing ground mentally and physically for years past, that he could not conduct a connected conversation, that he had experienced a marked change in care for his personal attire, did not recognize his friends as had been his custom, could not transact any business, and that insanity was shown by failure of his sight, inability to feed himself, in his facial expression, and frequent abberations in his conduct.

It is contended by the appellants that the final decree of

the chancellor is so contrary to the weight of evidence and so totally unsupported by the legal effect of the evidence on all these points that it becomes the duty of this Court to reverse and remand the cause for proper judgment.

The evidence took a very wide range over eight hundred pages, a large portion of which is useless. Some thirty witnesses were called to testify. The evidence went to every point relied on; on some of them it was about as conflicting as it was possible to be. The chancellor resolved these conflicts against appellants and so far as the record discloses, he was fully warranted in doing so. The decision of the chancellor is strengthened by the fact that he heard all the evidence and saw the witnesses depose.

It is quite a truth that this Court will reverse the chancellor if it is made clear that he misinterpreted the probative force of the evidence or was guided by considerations *de hors* the evidence but we find nothing here to support that contention except the opinion of counsel and that alone cannot prevail over the decision of the chancellor. Neither will this Court pit its judgment against that of the chancellor solely on the question of conflicting evidence. The evidence as a whole was such that a judgment either way might have been found and amply fortified. In the judgment found, there is no showing whatever that the chancellor was misguided.

On the question of undue influence, there is not a word of direct support in the evidence. Lack of consideration, mental weakness, and confidential relationship is relied on to support this contention. What we have heretofore said disposes of the question of mental weakness. The chancellor conclusively settled that question against the contention of appellants and we are not shown that in so doing, error was committed.

On the question of lack of consideration, the answer to

the bill of complaint flatly denies the charge and the evidence shows that the appellee and her husband had lived near the grantors for many years, that she had been an attentive, sympathetic daughter-in-law for all these years, that she had constantly ministered to the father and mother-in-law in their illness and affliction, that the wife of the elder son had abandoned them and never came about them until there was a prospect of something to divide, that they were attached to the adopted children of appellee, and that they had no other blood relations dependent on them or on whom they could bestow their bounty.

The deeds and the mortgage withheld a life interest in the estate for the grantors and took effect at their death. They had prepared a mausoleum for their burial at the old home in New York and had left instructions for their remains to be deposited therein. Such a showing was ample consideration for the deeds and the assignment. On the whole showing made, we see nothing unnatural in the transaction.

Other questions urged have been considered but what we have said disposes of the case, so we do not deem it essential to discuss them.

The judgment below is affirmed.

Affirmed.

BUFORD and THOMAS, J. J., concur.

CHAPMAN, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.