479 So.2d 90 (1985)
CHASE FEDERAL SAVINGS AND LOAN ASSOCIATION, Petitioner,
v.
Jerry B. SCHREIBER, Personal Representative of the Estate of Theadores W. Ross, Respondent.
No. 63017.
Supreme Court of Florida.
August 30, 1985.
Rehearing Denied January 2, 1986.
*91 Therrel, Baisden, Stanton, Wood & Stetlin, Miami Beach, and Frank R. Gramling of Fertig, Curtis & Wakefield, Fort Lauderdale, for petitioner.
Jerry B. Schreiber, Miami, and Joseph A. McGowan, Hollywood, for respondent.
BOYD, Chief Justice.
This is a petition to review a decision of the Third District Court of Appeal, sitting en banc, reported as Schreiber v. Chase Federal Savings & Loan Association, 422 So.2d 911 (Fla. 3d DCA 1982), in which the district court held that strict decisional conflict, as that concept has been used to define this Court's authority to review district court decisions, is the standard to be used in determining when intra-district decisional conflict exists to allow the district court to sit en banc to harmonize its decisions. The district court certified the following question to be of great public importance:
What is the proper scope of review for district courts of appeal in granting rehearings en banc?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question by holding that the district courts of appeal, in exercising their en banc power, are not limited by the case-law standards adopted by the Supreme Court of Florida in the exercise of its discretionary conflict jurisdiction. We hold that the district courts are free to develop their own concepts of decisional uniformity.
The case which precipitated the certification of the question concerning the scope of en banc review involves the validity of a deed to a grantee, not related to the grantor by blood or marriage, in which the stated consideration was "love and affection." The specific issue is whether a deed which shows on its face that the consideration is "love and affection," but does not show on its face that the grantor and grantee are related by blood or marriage, is effective to pass title.
The record reflects that Theadores Ross, a lady ninety years of age, transferred title to her home to Peter Cournoyer by a quitclaim deed which stated that "[t]his quitclaim deed is being given with the consideration being love and affection." The deed was recorded with the minimum amount of documentary stamps affixed. Cournoyer then sold the property to Luis and Gladys Perez for $50,000. The Perezes obtained the major portion of the purchase price from a loan supplied by Chase Federal Savings and Loan Association and secured by a mortgage on the property in question.
After Cournoyer sold the property to the Perezes, Ross brought this action seeking cancellation of her deed to Cournoyer, Cournoyer's deed to the Perezes, and the Perezes' mortgage to Chase Federal, on the ground that the original deed to Cournoyer was void for lack of consideration. The trial court found "there was no consideration for the execution of ... [the deed to Cournoyer] with the exception of love and affection and therefore equitable title and interest in the subject property remained" in Ross. The trial court concluded, however, that "legal title did pass" from Cournoyer to the Perezes because the Perezes were "bona fide purchasers having paid a valuable consideration without notice of any infirmity, and therefore their title to the subject property and interest in the subject property respectively shall stand." Finally, the trial court, holding that a constructive trust arose for the benefit of Ross in the proceeds received by Cournoyer in the sale to the Perezes, entered a judgment for Ross against Cournoyer in the amount of $50,000.
Ross appealed the trial court's denial of her claim for cancellation of the deeds and mortgage, asserting that the Perezes, as purchasers, and Chase Federal, as mortgagee, did not have valid interests in the property because there was notice on the face of the deed to Cournoyer that the consideration was legally insufficient. Therefore, Ross contended, the Perezes were not bona fide purchasers for value without notice and Chase Federal could not claim a valid mortgage on the property. The district court of appeal, 424 So.2d 779, *92 initially rejected Ross's argument and affirmed the trial court's order without opinion. Judge Schwartz dissented. Ross moved for rehearing en banc and the court, pursuant to the procedure governed by Florida Rule of Appellate Procedure 9.331, granted it. A majority of the en banc court considering the cause on the merits reversed the trial court, holding that under the district court's prior decision in Florida National Bank & Trust Co. v. Havris, 366 So.2d 491 (Fla. 3d DCA 1979), a deed given to a non-relative in return for love and affection is invalid for lack of consideration. In so holding the district court found that the Perezes and Chase Federal were on notice to make inquiry concerning the propriety of Ross's deed to Cournoyer because the only consideration it reflected was "love and affection." The district court then remanded the cause with directions to cancel the deeds to Cournoyer and the Perezes and the mortgage to Chase Federal. We hold that the deed was valid and effective to pass legal title notwithstanding that there was no valuable consideration paid and the grantor and grantee were not related.
The judges of the district court sitting en banc disagreed among themselves as to the standard to apply to determine whether there was conflict between the decision of the initial three-judge panel of the district court in the instant case and the district court's previous decision in Havris. In the initial panel decision, as previously stated, the court affirmed the trial court without opinion with Judge Schwartz writing a dissent. The dissent asserted that the majority had failed to properly apply Havris. In Havris, an action was brought by the grantor to cancel a deed to the unrelated grantee on the ground that the deed was not supported by consideration, which was stated as love and affection. As noted, the district court there held that "love and affection" did not constitute valid consideration where the conveyance was between persons unrelated by blood or marriage and that the deed was invalid. In the instant case, four members of the district court sitting en banc  Judges Schwartz, Hendry, Pearson, and Jorgenson  believed that there was "a lack of uniformity" between Havris and the initial decision in the instant case. These judges believed that Florida Rule of Appellate Procedure 9.331 allowed the district court to sit en banc in this case in order "to maintain uniformity of decisions." Four other judges of the en banc court  Judges Hubbart, Nesbitt, Barkdull, and Baskin  believed that the district court had no authority to sit en banc in this case because the controlling facts in Havris and this case were not the same. According to these four judges, there was no direct conflict between Havris and this case under the standard used by the Supreme Court of Florida in exercising its conflict jurisdiction. These four judges concluded that they were obligated to follow the precedent established in Nielsen v. City of Sarasota, 117 So.2d 731 (Fla. 1960), which defined decisional conflict as
(1) the announcement of a rule of law which conflicts with a rule previously announced by this [Florida Supreme] Court, or (2) the application of a rule of law to produce a different result in a case which involves substantially the same controlling facts as a prior case disposed of by this Court.
Id. at 731 (emphasis in original). One member of the en banc panel, Judge Ferguson, agreed that Nielsen provided the correct standard to be used by the district courts in determining conflict for en banc purposes, but believed that under that standard conflict existed between Havris and the initial panel decision in the instant case.
Judge Nesbitt, in a dissenting opinion concurred in by four other members of the court, expressed the view that since the en banc rule was established to resolve intra-district conflict which was formerly resolved by the Supreme Court, then the power exercised by the district courts to hear en banc proceedings must be the same as the standard adopted by the Florida Supreme Court in the exercise of its discretionary conflict jurisdiction. Judge Nesbitt further asserted that any change in *93 the definition of conflict by broadening the present Florida Supreme Court standard would be unconstitutional. Judge Hubbart wrote a dissenting opinion in which he agreed with Judge Nesbitt and detailed the history of Florida's rule 9.331.
We respectfully reject the interpretation that the district courts, in exercising their en banc powers, are limited by the standards adopted in case decisions by this Court in the exercise of its discretionary conflict jurisdiction. This Court has held the en banc process to be constitutional and has stated that "[t]he district courts are free ... to develop their own concept of decisional uniformity." In re Florida Rules of Appellate Procedure, Rule 9.331, 374 So.2d 992, 994 (Fla. 1979), as modified in 377 So.2d 700 (Fla. 1979), and as further modified in 416 So.2d 1127 (Fla. 1982).
In holding the en banc process constitutional, we construed the "three judges shall consider each case" language of article V, section 4, as not restricting the district courts from hearing cases en banc. Our decision was consistent with the decision of the United States Supreme Court in Textile Mills Securities Corp. v. Commissioner, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249 (1941). In Textile Mills, the United States Supreme Court upheld the inherent authority of the Third Circuit Court of Appeals to establish a procedure for that court to sit en banc without authorization by existing rule, statute, or constitutional provision. See Hearing and Rehearing Cases En Banc, 14 F.R.D. 91 (3d Cir.1953); Commissioner v. Textile Mills Securities Corp., 117 F.2d 62 (3d Cir.1940). In construing the statutory provision establishing the federal circuit courts of appeals, the United States Supreme Court concluded that the proviso that there should be a circuit court of appeals in each circuit "which shall consist of three judges" did not prohibit an en banc process and that the court was not restricted to deciding cases with only three judges. In approving this en banc process, the United States Supreme Court commented that it was a means of "more effective judicial administration" and determined that "[c]onflicts within a circuit will be avoided. Finality of decisions in the circuit courts of appeals will be promoted." 314 U.S. at 335. It should also be noted that in a subsequent case the United States Supreme Court reaffirmed this view and held that the en banc process was an expression of the court's power rather than a party's right. Western Pacific Railroad Corp. v. Western Pacific Railroad Co., 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986 (1953). In Western, the Court held that although a litigant does not have a right to an en banc hearing, the litigant must be given an opportunity to request such a hearing.
The federal en banc process is broader than that provided in Florida Rule of Appellate Procedure 9.331 because, in addition to addressing issues of conflict, the federal process allows the courts of appeal to sit en banc to hear cases of "exceptional importance." When this Court adopted rule 9.331 in 1979, we decided that there was no need to authorize the en banc process in the district courts except for use in the settlement of intra-district conflict to help reduce the then-existing caseload of the Florida Supreme Court.
The en banc process now authorized for the district courts is designed to help the district courts avoid conflict, assure harmonious decisions within the courts' geographic boundaries, and develop predictability of the law within their jurisdiction. Consistency of decisions within each district is essential to the credibility of the district courts. There has been criticism of intermediate appellate courts for their failure to speak with "a single voice of the law." Meador, An Appellate Court Dilemma and A Solution Through Subject Matter Organization, 16 U.Mich.J.L.Ref. 471, 474 (1983). As judges are added to Florida's district courts to meet expanding caseloads, the resulting increased number of three-judge panels cannot help but increase the number of inconsistent and conflicting decisions. When there is a general rotation of Florida's district court judges among three-judge panels, the increased number of panel combinations compounds *94 the problem. With a five-member court, the number of different panel combinations is ten. With a twelve-member court, however, the number of panel combinations is 220. The en banc process provides a means for Florida's district courts to avoid the perception that each court consists of independent panels speaking with multiple voices with no apparent responsibility to the court as a whole. The process provides an important forum for each court to work as a unified collegial body to achieve the objectives of both finality and uniformity of the law within each court's jurisdiction. We have previously said that
[u]nder our appellate structural scheme, each three-judge panel of a district court of appeal should not consider itself an independent court unto itself, with no responsibility to the district court as a whole... .
... .
... We would expect that, in most instances, a three-judge panel confronted with precedent with which it disagrees will suggest an en banc hearing. .. . Consistency of law within a district is essential to avoid unnecessary and costly litigation.
416 So.2d at 1128. We expressly granted the district courts broad discretionary authority "to develop their own concept of decisional uniformity" to be able to fully carry out these expressed purposes. 374 So.2d at 994. In regard to the original panel decision in the instant case and the district court's decision in Havris, we agree with Judge Schwartz that it would be difficult for the legal profession to harmonize these decisions. Havris held that a deed to a non-relative not based on a valuable consideration was not effective to pass legal title; the original panel decision in the instant case affirmed a trial court decision holding that such a deed was effective to pass legal title.
We hold that the district court of appeal, in implementing the provisions of appellate procedure rule 9.331, has authority to adopt the standard of conflict it believes necessary or appropriate in order to harmonize the decisions of the court and avoid costly relitigation of similar issues within its appellate district. We therefore quash the decision of the district court of appeal to the contrary.
We now reach the issue upon which the intra-district conflict below was predicated and which is the essential legal issue in question in the original dispute giving rise to this proceeding.
As was stated above, Theadores W. Ross conveyed her home to Peter R. Cournoyer by means of a quitclaim deed. The deed contained the standard formal reference to the "consideration of $10.00 and other valuable consideration," but contained an additional statement reciting, "This quitclaim deed is being given with the consideration being love and affection."
The deed from Ross to Cournoyer was duly recorded. Subsequently, Cournoyer sold the property to Luis and Gladys Perez for $50,000. Mr. and Mrs. Perez, who are not parties to this proceeding, gave a mortgage on the property to respondent Chase Federal Savings and Loan Association to secure a loan which provided much of the purchase money.
After the conveyance from Cournoyer to the Perezes and the execution by the latter of the mortgage in favor of Chase Federal, Mrs. Ross brought an action to rescind and cancel her deed to Cournoyer. Her petition sought to have the deed set aside on the ground that a deed not supported by a valuable consideration can only be valid if the grantor and grantee are related either by consanguinity or by marital affinity. As for the claim of the Perezes and their mortgage holder, Mrs. Ross argued that because the public record gave them notice that the deed to Cournoyer was void because given in consideration of love and affection to a grantee not declared in the deed to be a familial or marital relation of the grantor, they were not entitled to be treated as subsequent purchasers without notice of the invalidity of the deed.
The trial court found that there was in fact no monetary consideration paid for the conveyance from Ross to Cournoyer. The *95 court nevertheless held that the deed was effective to pass legal title. The trial court found as a matter of fact that the Perezes and Chase Federal did not have actual notice of any formal defect or invalidity in the deed from Ross to Cournoyer. So the trial court declined to give Mrs. Ross the requested relief of declaring her deed to Cournoyer a nullity and cancelling it. The court ruled, however, that when Cournoyer took legal title from Mrs. Ross, there was a resulting trust in her favor because of the lack of a valuable consideration. Therefore, when he subsequently sold the land, the court ruled, he held the proceeds in trust for her. The trial court accordingly entered judgment for Mrs. Ross in the amount of $50,000, equalling the proceeds of the sale by Cournoyer to the Perezes.
The judgment against Cournoyer in favor of Mrs. Ross, based on the resulting trust theory, was not appealed and its legal correctness is not an issue before us. Mrs. Ross appealed the trial court's judgment denying her claim for cancellation of the deed.
As was stated previously, the trial court's judgment was at first simply affirmed without opinion. Ross v. Chase Federal Savings & Loan Assn., 424 So.2d 779 (Fla. 3d DCA 1981). On rehearing en banc, however, the district court of appeal reversed the trial court and held (1) that the deed from Ross to Cournoyer was void and not effective to convey any interest in the land and (2) that the Perezes and Chase Federal had constructive notice, from the title record, of the invalidity of the deed and therefore could not claim any interest superior to that of Mrs. Ross by virtue of being subsequent purchasers without notice. Schreiber v. Chase Federal Savings & Loan Assn., 422 So.2d 911 (Fla. 3d DCA 1982). Petitioner Chase Federal contends that this ruling was error. We agree and quash the decision.
The district court sitting en banc adopted as its opinion on the merits of the case the dissenting opinion filed with the initial panel decision affirming the trial court. That opinion said in pertinent part:
This court recently and squarely held in Florida National Bank and Trust Co. at Miami v. Havris, 366 So.2d 491 (Fla. 3d DCA 1979) that a deed given to a non-relative in return only for "love and affection" is "without consideration and ... invalid." 366 So.2d at 496. Since Cournoyer was admittedly not related by blood or marriage to Ms. Ross, this principle is plainly applicable to this case. It is just as apparent that the Perezes and Chase were on implied or constructive notice of the resulting invalidity of the deed. The face of the recorded instrument itself shows that the only consideration was "love and affection" and did not affirmatively indicate any relationship between the grantor and grantee, who have different names. I think that these recitals clearly, and at the least, put subsequent purchasers to the minimal duty of inquiry as to whether such a relationship in fact existed... . Since it is undisputed both that such an investigation would have revealed that it did not and that no such investigation occurred, the cited cases require, in my view, that the judgment below be reversed.
424 So.2d at 779-80 (citations and footnotes omitted).
The Havris decision found by the district court to be controlling involved an action for rescission of a deed, reserving a life estate, from an elderly lady to her housekeeper's niece. The trial court found that the niece paid no valuable consideration for the conveyance but that the deed of gift was valid. The district court of appeal reversed, holding as follows:
We hold, as contended by the appellant, that the two deeds by which this 94-year-old woman transferred her home property to Mary Havris were without consideration and were invalid. In holding the unrecorded deed of March 19, 1975, was valid, the trial court misapprehended and misapplied the law, by concluding that love and affection of or towards one not a blood relation of the grantor constituted adequate consideration *96 for Mrs. Garrett's deeding of her property to Mary Havris, to whom she was not related.
366 So.2d at 496.
A case in contrast to Havris is Williamson v. Kirby, 379 So.2d 693 (Fla. 2d DCA 1980). There an elderly lady conveyed her home to her close friend reserving a life estate to herself. A subsequently appointed guardian of the grantor sought to set aside the deed. Although alleging that the deed was given without consideration, the complaint also alleged that a relationship of confidence had existed between grantor and grantee and that the grantee had exercised undue influence in procuring the deed. The trial court found that there was no consideration paid, the deed of conveyance being "an outright gift," that there was a confidential relationship, that the grantee was active in procuring the gift, and that the deed was the result of undue influence. The district court agreed that the circumstances of the relationship of trust and confidence together with the conduct of the grantee in facilitating the conveyance were sufficient to raise a presumption of undue influence, but disagreed that this justified setting aside the deed.
If the contestant is successful in raising the presumption, the beneficiary then has the burden of explaining his active involvement in the preparation of the will [or inter vivos gift]. He does not have the burden of disproving undue influence. If the explanation is reasonable, the presumption vanishes and it becomes the court's responsibility to determine whether the contestant has established undue influence by the greater weight of the evidence. Such evidence may include not only the evidence initially presented to raise the presumption but any additional evidence which the parties have introduced.
379 So.2d at 695 (bracketed language added). The court found that the grantee's explanation of her involvement in the procuring of the conveyance rebutted the presumption of undue influence and that the evidence as a whole showed that the gift was not the product of undue influence. The evidence showed that the grantee's conduct was not improper and the grantor's gift was voluntary and reasonable under the circumstances.
While our courts must be vigilant to protect the aging against any form of overreaching, simply because an elderly person chooses to give her property to a friend instead of her relatives does not warrant cancelling the deed where as here there is no real proof of undue influence.
Id. at 697. While it appears from the opinion that lack of consideration was either not raised on appeal or was abandoned, it is highly significant that there was no suggestion in the opinion that a deed is rendered invalid solely because of the lack of valuable consideration and lack of family relationship. A comparison of Williamson v. Kirby with Havris and the district court decision in the present case suggests an inconsistency in the law on this question.
We are also troubled by the implications of Havris in the area of charitable gifts of land. Where one donates land for religious, educational, or philanthropic purposes, it seems clear that there is no real monetary consideration and that any recitation of nominal consideration in the deed is purely a matter of form. Yet under Havris, such a gift may be set aside contrary to the intent of the donor.
As was stated above, the district court relied on Havris as the determinative authority for its decision. In Havris, as authority for its holding, the court cited the statement in 10 Florida Jurisprudence, Deeds § 59 that for love and affection to constitute good consideration, "there must be some blood or marriage relationship between the grantor and the grantee." "Said statement," the court said, "is derived from the English Rule which requires that in order for love and affection to be good consideration for a conveyance, said love and affection must be toward one to whom a natural duty exists, such as near relatives by either consanguinity or affinity." Id. at 496. The only Florida decisions cited *97 in support of the ruling were cases where love and affection was ruled sufficient consideration and the grantor and grantee were related.[1] No case was cited where a deed was cancelled by a Florida court solely because of lack of a valuable consideration. The question before us is whether the "English Rule" referred to in Havris is part of the law of Florida. As has already been indicated, we find that it is not.
The so-called English Rule relied on by Havris and by the district court in the instant case can be summarized as follows: a deed, in order to be effective to pass title, must be supported by either a valuable or a good consideration, the former being required in deeds by bargain and sale and the latter being sufficient in covenants to stand seised to the use of another, which may only be used when the grantor and grantee are related by consanguinity or marital affinity. See 4 H. Tiffany, The Law of Real Property § 957 (3d ed. 1975); 23 Am.Jur.2d Deeds §§ 12-13, 61-62 (1965). Some secondary sources of legal authority indicate that this rule is in effect in Florida by virtue of the operation of the Statute of Uses. See, e.g., 19 Fla.Jur.2d §§ 5, 44, 49-50 (1980). However, we find no binding legal authority holding that the purported rule is now a viable part of Florida law.
The Statute of Uses was enacted in 1535 to remedy the problems caused by dual legal and equitable ownership of land.[2] Equitable ownership had arisen as a means of avoiding the legal requirements of land transfer and the feudal incidents of legal land ownership.[3] The statute provided that anyone with beneficial ownership of land should henceforth be deemed to be the legal owner.[4]
After the enactment of the statute, the common-law courts began to recognize the ownership interests of beneficiaries of uses, treating them as legal title holders. Previously their interests were only enforceable in the chancery court.[5] Two methods of transferring uses, that is, equitable ownership interests, previously recognized in the chancery court, were the "bargain and sale" and the "covenant to stand seised to the use of another."[6] After the enactment of the statute, these two conveyancing methods came to be recognized as valid in the law courts and became the most commonly used forms of deeds. As a matter of form, the common-law courts imposed the same prerequisites to enforceability as had developed in the court of chancery prior to the enactment of the statute. Those requirements included monetary consideration in the case of the deed by "bargain and sale." The "covenant to stand seised to the use of another" was enforceable in equity without a monetary consideration if made to a family member, and was widely used in connection with marriage settlements. The common-law courts imposed the same requirement.[7]
*98 The requirement of consideration, and the exception allowing "good" consideration to suffice in transfers to one related by blood or marriage, were originally imposed as prerequisites to enforcement of a promise to hold land for the benefit of another. Often the petitioner was one who had paid money in exchange for the promise and the chancery court considered it unjust for the covenantor to withhold the benefits after having received the money.[8] Often the remedy was a decree requiring the legal conveyance of the land to the covenantee.[9] While consideration was thus an important factor to the chancery court in arriving at the conclusion that the prayer for relief was equitable, it should be remembered that at the same time there was no requirement of consideration to make effective the ordinary conveyance of legal ownership of land by livery of seisin.[10] Thus the chancery court's requirement that there be consideration as a prerequisite to enforcement of a use by bargain and sale or by covenant to stand seised to the use of another is very much like our modern law's requirement of consideration to support enforcement of a promise made in a contract. It is by something of an historical accident that modern deeds are said to require a valuable or good consideration. This formal requirement has persisted because the modern deed is the descendant of the most popular forms of conveyance used after the enactment of the Statute of Uses.
Florida has its own version of the Statute of Uses. Section 689.09, Florida Statutes (1983), provides as follows:
By deed of bargain and sale, or by deed of lease and release, or of covenant to stand seized [sic] to the use of any other person, or by deed operating by way of covenant to stand seized to the use of another person, of or in any lands or tenements in this state, the possession of the bargainor, releasor or covenantor shall be deemed and adjudged to be transferred to the bargainee, releasee or person entitled to the use as perfectly as if such bargainee, releasee or person entitled to the use had been enfeoffed by livery of seizen [sic] of the land conveyed by such deed of bargain and sale, release or covenant to stand seized; provided, that livery of seizin can be lawfully made of the lands or tenements at the time of the execution of the said deeds or any of them.
The fact that the statute, like the English statute, provides that various forms of deeds are sufficient to vest legal title in the grantee, has led to the statement found in some authorities to the effect that a consideration is necessary to support a deed. E.g., 19 Fla.Jur.2d, Deeds, §§ 5, 44 (1980). However, section 689.09 does not expressly require that a deed of land be supported by consideration in order to be effective. Nor is such a requirement clearly found in the decisions applying, interpreting, or construing the statute.[11] The statute merely operates to vest legal title in the beneficiary when real property is conveyed to a grantee for the benefit of another.[12]
It is now widely recognized that the chancery court's requirement of consideration *99 as a prerequisite to enforcement of what we today would treat as a contract to convey has little logical relation to modern land conveyancing.
The old rule of the court of chancery, still part of the law of trusts, that the court would not interfere to compel performance of a purely voluntary promise, confined enforcible uses before the statute to those founded on a consideration; and therefore a consideration was essential to raise a use under the statute, and a conveyance would not operate under the statute of uses unless there was a consideration recited or proved. On this ground American courts have denied deeds effect as conveyances by way of use. But the greater number of our courts, by far, give no regard to such objections, holding that our conveyances operate by virtue of the state statutes, without any respect to the old requirements.
Rood, The Statute of Uses and the Modern Deed, 4 Mich.L.Rev. 109, 121 (1905). Among the author's conclusions in the work just cited were:
(1) That the statute of uses, the doctrines concerning uses, and conveyances operating by virtue of the statute of uses, have little or nothing to do with the validity of the ordinary conveyance in the great majority of the states. It must be remembered that we are not discussing the importance of the old law to enable one to understand, or as still governing, trusts, whether created by deed or otherwise.
(2) That generally a conveyance satisfying the local statutes is sufficient, and one not satisfying such statutes is insufficient, regardless of the old common law.
Id. at 123.
All scholars and commentators now agree that the role of consideration in land conveyancing has been reduced to a mere matter of form except when courts choose to rely on the lack of consideration as a reason to intervene when something fraudulent or inequitable has taken place. Powell says, "Today, the necessity for consideration has become a pure matter of form." 6A Powell, supra § 888 (footnote omitted). By Tiffany we are told, "Although there can be not the slightest question that a conveyance is ordinarily valid without any consideration, expressions are to be found in judicial opinions in this regard which may tend to mislead." 4 Tiffany, supra § 984. Boyer reasons that when a deed recites no consideration, it is logical to presume "that a gift was intended." 1 R. Boyer, Florida Real Estate Transactions § 11.01 (1984). Boyer also appears to be on firm ground when he concludes as follows:
It is believed that the role of consideration in suits for avoiding deeds is an ancillary one, and that the real issue in most cases is simply the attainment of an equitable result. Thus, no consideration, failure of consideration, or even inadequate consideration are circumstances to be considered along with others in deciding whether fraud, undue influence, violation of confidence or unconscionable advantage exists. Many of the deeds that have been cancelled for failure of consideration were given in exchange for support. When that support was not forthcoming and the familial love thereafter waned, one might infer either that the promises were made with no intention of keeping them; hence, were fraudulent, or that the deed was executed as a result of undue influence. In any event, to not cancel the deed would be most inequitable, tantamount to letting the grantee perpetrate a fraud on the grantor, or allow the grantee to be unjustly enriched at the grantor's expense.
Id. (footnotes omitted).
There are numerous examples that illustrate this point. In Anders v. Anders, 143 Fla. 721, 197 So. 451 (1940), the Court approved the cancellation of a deed given in exchange for a promise of support where the grantee made the promise fraudulently to procure the conveyance. The fact that the support promised was not given  i.e. the failure of consideration  was a factor *100 which, taken together with the circumstances of fraud and undue influence, was deemed to justify cancellation. See also Cook v. Adams, 89 So.2d 6 (Fla. 1956); Carter v. Colson, 142 Fla. 187, 194 So. 619 (1940).[13] In Anders, the grantor and grantee were related by marriage so under the Havris rule there was a "good" consideration for the conveyance. In Parrish v. Robbirds, 146 Fla. 324, 200 So. 925 (1941), on the other hand, the Court held that there was no basis for equitable relief by cancellation or rescission, where the record showed no "taint of illegality." The Court noted both the family relationship and that the land was conveyed in return for services as showing consideration, "besides the recital that a valuable consideration passed."[14] Of similar import are such cases as Drumwright v. Dana, 138 Fla. 672, 190 So. 54 (1939); Wise v. Wise, 134 Fla. 553, 184 So. 91 (Fla. 1938); and Waterman v. Higgins, 28 Fla. 660, 10 So. 97 (1891).
In Supple v. Supple, 370 So.2d 834 (Fla. 3d DCA 1979) and Severi v. Neville, 361 So.2d 786 (Fla. 4th DCA 1978), conveyances were upheld where there was both a family relationship and the provision of services as consideration supporting the deed. In Vasquez v. Santisteban, 334 So.2d 97 (Fla. 3d DCA 1976), the lack of monetary consideration was rejected as a ground for setting aside an intra-family conveyance, but the case is much more significant and interesting for the burden it placed on a judgment creditor seeking to establish that the conveyance was fraudulent.[15] In Southern Life Ins. & Trust Co. v. Cole, 4 Fla. 359 (1852), a deed of conveyance of a mortgage was set aside and the Court made the statement that in the absence of "consideration of benefit or advantage to the grantor, or of detriment to the grantee, to support these deeds," they must be declared "nuda pacta." But it should be noted that the conveyance there, a mortgage executed along with a note, was an integral part of an understanding which the Court found to be contractual in character and, the bargained-for consideration not having materialized, the Court set the mortgage aside. The case certainly does not stand for the proposition that there can be no such thing as an absolute deed of gift.
We can find no reported Florida appellate court case in which a deed was set aside solely on the ground of lack of consideration existing to support the deed except Havris and the district court decision in the instant case. We conclude that the case law of Florida does not support the proposition that the historical equitable requirement of valuable or good consideration to support enforcement of the deed of bargain and sale or of covenant to stand seised, respectively, is part of the law of Florida now applicable to deeds generally. As the above-quoted scholarly article by Mr. Rood advises, we believe the formal requirements for conveyances are found in the conveyancing statutes. Neither sections 689.01  .03, Florida Statutes (1977), nor section 689.09 for that matter, contain any mention of a requirement of consideration.
To the extent, however, that there is doubt in the law of Florida as to the requirement of consideration when ownership of land is transferred, we find that it is conclusively resolved against such a requirement by the state constitutional law of homestead.
In 1968, a new and substantially revised state constitution was adopted by the electorate of Florida. See House J.Res. 1-2X; Sen.J.Res. 4-2X; Sen.J.Res. 5-2X (1968). Among the changes was an amendment to the provisions on exemption of *101 homesteads from forced sale. Article X, section 1 of the Florida Constitution of 1885 provided for protection of homesteads from "forced sale under process of any court," and that "no judgment or decree or execution shall be a lien upon exempted property except as provided in this Article." As a concomitant incident of this basic constitutional policy, property covered by the homestead exemption was not subject to being freely devised by the owner if there were surviving spouse or children. Art. X, § 4, Fla. Const. of 1885. However, article X, section 4 of the Florida Constitution of 1885 did not prohibit the holder of homestead property from "alienating his or her homestead so exempted by deed or mortgage duly executed by himself or herself, and by husband and wife, if such relation exists."
Pursuant to article X, section 4, this Court held that the holder of homestead property, joined by the spouse if married, could convey the property, even if there were children to whom it would descend upon the death of the owner, but only for a valuable consideration. Regero v. Daugherty, 69 So.2d 178 (Fla. 1953); Daniels v. Mercer, 105 Fla. 362, 141 So. 189 (1932). This holding was in keeping with the constitutional policy of preserving the family homestead as a means of providing continued shelter to the family. Without valuable consideration, a conveyance of the homestead was void. See, e.g., Reed v. Fain, 145 So.2d 858 (Fla. 1962).
Article X, section 4 of the Florida Constitution, as revised in 1968, provides in pertinent part: "The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift... ." The change from language allowing "alienating by deed or mortgage" to language allowing the owner to "alienate ... by mortgage, sale, or gift" has the clear and unequivocal effect of authorizing the owner of homestead property, joined by the spouse if married, to give away the homestead property, that is, to convey it by deed without consideration. Nothing in the 1968 constitution appears to limit this provision authorizing the owner to give away the property. Thus there is no requirement that the grantee be related to the grantor by consanguinity or marital affinity.
Because the constitutional law of homestead protection has been changed to eliminate the requirement of a valuable consideration as a condition of any conveyance of homestead property, we conclude there should be no such limitation on the right to alienate by gift real property in general. If a homestead, which it is the policy of the law to protect and preserve in the family, may be conveyed away by deed of gift, we see no reason why the same rule should not apply to all property. We therefore hold that there does not need to be consideration in order for an owner of land to convey it by deed to another person.
It follows from our holding that the estate of Mrs. Ross is not entitled to have the deed set aside on the ground that it was void. Nor does the estate have any equitable claim superior to that of the subsequent purchasers and mortgagee on the ground that they had notice of the defect in the deed, because there was no defect in the deed.
We deem it advisable to caution against too broad an interpretation of our holding. It should be obvious that our opinion does not in any way affect the existing law of Florida under which consideration is required to support contractual undertakings of any kind whether characterized as contracts, covenants, promises, agreements, or the like. Nor do we intend our ruling to eliminate all cognizance of the existence of consideration in land conveyancing when it is properly relevant to some legal question. We hold only that a deed, sufficient in form, voluntarily executed by a competent grantor, is effective to convey the owner's legal title regardless of whether he receives a contractual consideration. We do not intend to change any part of that body of the law that treats purchasers for consideration differently from gratuitous grantees for purposes of establishing title priorities under the recording statute, section *102 695.01, Florida Statutes (1983), Moyer v. Clark, 72 So.2d 905 (Fla. 1954); Zachary Veneer Co. v. Engelken, 136 Fla. 89, 186 So. 813 (1939); Black v. Skinner Mfg. Co., 53 Fla. 1090, 43 So. 919 (1907); Stockton v. National Bank of Jacksonville, 45 Fla. 590, 34 So. 897 (1903), or common-law legal or equitable principles. See, e.g., Myers v. Van Buskirk, 96 Fla. 704, 119 So. 123 (1928). Nor does our holding say anything about the right of a gratuitous grantee to obtain reformation of a deed in equity. See, e.g., Harrod v. Simmons, 143 So.2d 717 (Fla. 2d DCA 1962). Nor do we mean to make any statement of law regarding the significance of consideration or the lack thereof when a deed is challenged as a fraudulent conveyance, see, e.g., Sample v. Natalby, 120 Fla. 161, 162 So. 493 (1935), or as having been procured by fraud, coercion, or undue influence. See, e.g., Peacock v. DuBois, 90 Fla. 162, 105 So. 321 (1925). In this connection, we point out again that the complaint to cancel the deed in this case was based entirely on the lack of a valuable consideration and did not allege fraud, coercion, or undue influence.
Finally, and perhaps most importantly, our holding is not intended to detract in any way from the power of a court of equity, in a proper case, to order cancellation or rescission of a deed for lack or failure of consideration where consideration is demonstrably intended by the parties as part of the transaction and where such relief is sought on proper equitable grounds. We only hold that an owner of land may make a gift of it to another person regardless of family or marital relationship.
Our holding that an owner of land generally may convey it without consideration to any person the grantor chooses is a rational and realistic position, more in keeping with the practicalities of modern land conveyancing than the Havris rule, rooted as it is in the practices of four and a half centuries ago. See, e.g., American Foam Industries, Inc. v. State Dept. of Revenue, 345 So.2d 343 (Fla. 3d DCA 1977) (quitclaim deed from sole stockholder to corporation without consideration required only minimum number of documentary stamps).
The decision of the district court of appeal on the question of the validity of the deed is quashed with directions that the case be remanded to the trial court for entry of a judgment for petitioner-defendant Chase Federal Savings and Loan Association. As has already been indicated, we also quash the district court's decision on the scope of its en banc authority.
It is so ordered.
ADKINS, ALDERMAN and SHAW, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion.
EHRLICH, J., concurs in part and dissents in part with an opinion, in which McDONALD, J., concurs.
McDONALD, J., dissents in part with an opinion.
OVERTON, Justice, concurring in part, dissenting in part.
I fully concur with that part of the majority opinion which holds that a district court of appeal has the en banc authority "to adopt the standard of conflict it believes necessary or appropriate in order to harmonize the decisions of the court and avoid costly relitigation of similar issues within its appellate district." That is the issue that gave this Court jurisdiction in this cause, by way of the question certified by the district court.
For the following reasons I strongly dissent from the portion of the majority opinion holding there was no defect in the deed from the 90-year-old woman to the young man, a non-relative who is referred to in one portion of the district court of appeal's opinion as a "con man." In my view, the majority's decision provides a means to protect title to real property for gigolos, mistresses, and con artists, and alters four and one-half centuries of common law in the process.
*103 The majority believes a property owner should be allowed to convey property without consideration. I find that this Court has, at least inferentially, approved such conveyances under certain presumptions and that we need not change centuries of law to accomplish that result. I also find that, because the deed in issue in this proceeding reflected on its face that it was without consideration, no purchaser can claim lack of notice of that fact.
In determining the validity of a conveyance, it is necessary to consider certain established legal principles and definitions. "Good consideration" and "valuable consideration" are terms of art with established legal meanings. The term "valuable consideration" means that the grantor has received something of value, such as services or money, for the conveyance of the property. See 3 Am.Jur.2d Deeds § 91 (1968); 17 C.J.S. Contracts § 92 (1963); Words and Phrases, "Valuable Consideration" (1972). The term "good consideration" denotes consideration based on a natural duty which exists between relatives by blood or marriage. The consideration is stated to be founded on love and affection, as a result of the natural duty that flows from the relationship. See 23 Am.Jur.2d Deeds § 92 (1968); 17 C.J.S. Contracts § 92 (1963); Words and Phrases, "Good Consideration" (1972).
As explained in the majority opinion, the need for consideration in the transfer of real property has a common law foundation based on the Statute of Uses. This Court has recognized that a grantor can convey real property without consideration and as a gift to a non-relative in situations involving parol transfers of land and transfers by quitclaim deed. A transfer of real property without consideration is, however, subject to the stringent condition that the grantee-beneficiary has the burden of proof when challenged to show the conveyance was without fraud, undue influence or unconscionability.
In Peacock v. DuBois, 90 Fla. 162, 105 So. 321 (1925), Mrs. DuBois, a woman in her late fifties who was facing a serious operation, conveyed her home to a 28-year old man who boarded in Mrs. DuBois' house for the three-month period preceding her death. In affirming the cancellation of the deed, this Court quoted with approval a decision of the Pennsylvania Supreme Court holding that
where a conveyance was made by a weak and sickly young man to a woman older than himself, and who had been to him as a mother, a presumption arose that such conveyance was obtained by undue influence.

Id. at 166, 105 So. at 327 (emphasis added). This Court noted in the Peacock decision that Mrs. DuBois was not bound to the young man "by love and affection," and stated:
The fact of the execution of the deed on the showing made by the record, we think, imposes on the appellant the duty of showing that the transaction was bona fide and that it was not secured by undue influence.

Id. at 167, 105 So. at 323 (emphasis added). This rule establishing a presumption of invalidity when there is no consideration for the conveyance was reaffirmed by this Court in a case involving a dispute between a mother and her son over title to real property in which this Court quoted with approval the following statement:
Inadequacy of consideration, where shown, is an element which is always given great weight by courts of equity in determining whether a transaction involving the transfer of valuable property by one to another is unconscientious or constructively fraudulent or perhaps as tending to prove actual fraud. Indeed, it has always been looked upon by such courts as sufficient to create a strong suspicion that the transaction has not been characterized by good faith in the party securing benefits thereby and to cast upon him the burden of making it perfectly clear that it was in all respects honest and fair and just to the grantor.

Stovall v. Stokes, 94 Fla. 717, 743, 115 So. 828, 837 (1927) (quoting Lynch v. Lynch, *104 22 Cal. App. 653, 661, 135 P. 1101, 1104 (Cal.Dist.Ct.App. 1913) (emphasis added)). This Court has also approved a parol gift of land contrary to the Statute of Frauds providing conclusive proof exists of the following elements: "(1) words showing an intent to give the land, (2) that possession was taken in reliance on the gift, and (3) that the donee made permanent and valuable improvements in anticipation of the gift, with the donor's acquiescence." Green v. Price, 63 So.2d 337, 338 (Fla. 1953).
In the instant case, the deed in issue stated on its face that the consideration for the conveyance was "love and affection." Nothing on the face of the deed indicated Mr. Cournoyer was related to the grantor, Mrs. Ross. The law is well-established that for "consideration" to be derived from "love and affection," there must be a "natural duty" which flows only from a family relationship by blood or marriage. Because Mrs. Ross and Mr. Cournoyer shared no family relationship, "good consideration," as that term is defined, did not exist. Under existing law, for the conveyance to be valid, the beneficiary must establish that the transaction was not the result of undue influence, fraud, or unconscionability. When, as here, it is apparent on the face of the deed that the conveyance is without consideration, any subsequent purchaser of the property takes title with notice of that defect. In my view, one who purchases property from the beneficiary of this type of conveyance must obtain other evidence of donative intent of the grantor to ensure that valid title can be conveyed.
I am also concerned that the decision on the merits of this case is directed towards an issue that was not presented or addressed by the trial court, the district court of appeal, or this Court in the first appeal. The issue initially argued and addressed was whether the purchasers of the property from Mr. Cournoyer and their mortgagee were bona fide holders for value without notice. I am concerned by the fact that this Court is deciding an extremely important property law issue on the basis of research generated almost exclusively by this Court, without full use of the adversary system and an opportunity for all parties to fully brief and address the question we now answer.
I reject for two reasons the contention that the change in the 1968 Constitution, article X, section 4, should control the result reached in this case. First, as noted, prior to the adoption of the 1968 Constitution, this Court recognized that a gift of real property could be made in limited circumstances. Second, in the official analysis of the proposed constitution submitted by the legislature to the voters for ratification at the November 5, 1968, general election, the change to the provision in issue is explained as follows:
[T]he right of a married owner to directly transfer by deed the title of the homestead to himself and his spouse as an estate by the entirety would be given constitutional status. Also, the Legislature would be directed to provide a method of alienating or encumbering homestead property where either the owner or spouse is incompetent.
Draft of Proposed 1968 Constitution, Art. X, § 4 analysis of proposed revision (July 20, 1968). No explanation of the major change addressed in the majority opinion was stated or implied.
In conclusion, the new rule of law set forth by the majority not only overrules 450 years of common law, but also adopts a principle that I can only characterize as the "gigolo-mistress relief rule." These may be harsh words, but the result reached by the majority in approving the transfer of title from a 90-year-old woman to a "con man" without consideration justifies that statement. Regrettably, the aged, infirm, and semiliterate members of our society will, in my view, be adversely affected by the majority opinion because principles of law that protected them will no longer be in force.
EHRLICH, Justice, concurring in part and dissenting in part.
An oft-noted feature of Florida's judicial organization is that our district courts of *105 appeal are intended to be, in most cases, courts of last resort. Johns v. Wainwright, 253 So.2d 873 (Fla. 1971); Karlin v. Miami Beach, 113 So.2d 551 (Fla. 1959); Ansin v. Thurston, 101 So.2d 808 (Fla. 1958). Today's decision merely serves to reemphasize the finality of the district courts' jurisdiction.
The courts of appeal establish a coherent and consistent body of precedent for the courts in that district. Our jurisdiction to review their decisions is the exception, rather than the rule. In light of this constitutionally imposed responsibility, taking it upon ourselves to define intra-district conflict for the districts themselves would be overreaching and presumptuous.
Our conflict jurisdiction attaches when districts are in express and direct conflict on the same question of law. Art. V, § 3(b)(3), Fla. Const. We should not expand our jurisdiction by reviewing differences in internal procedures which do not hinder the statewide administration of justice.
I would approve the decision of the district court of appeal on the issue of whether love and affection are sufficient consideration for a deed.
McDONALD, J., concurs.
McDONALD, Justice, dissenting in part.
I will accept, for the moment, that a person may convey property to a nonfamily member without consideration. But I am strongly of the view that such a conveyance is voidable upon a showing of undue influence or fraud on the part of the grantee. When a conveyance is to a nonfamily member and the consideration is plainly described as love and affection, it should alert all successors in title that the transaction may be suspect and subject to being voided. A grantor, or his heirs, should be able to rescind such a transaction and that person should be favored with a presumption of fraud or undue influence under the circumstances. Should the grantee dispel this presumption, such a suit for cancellation would fail. Should the grantee fail in this regard, the deed should be voided, together with voiding any successive transaction.
This cause should be remanded to the trial judge for him to decide the issue of fraud and undue influence in reference to the conveyance from Ross to Cournoyer.
NOTES
[1] Wise v. Wise, 134 Fla. 553, 184 So. 91 (1938); Waterman v. Higgins, 28 Fla. 660, 10 So. 97 (1891); Vasquez v. Santisteban, 334 So.2d 97 (Fla. 3d DCA 1976). The cases are cited at 366 So.2d at 497.
[2] 1 H. Tiffany, The Law of Real Property § 224 (B. Jones, 3d ed. 1939); Smith, The Statute of Uses: A Look at Its Historical Evolution and Demise, 18 W.Res.L.Rev. 40, 47 (1966); Wilson, The Florida Statute of Uses, 21 Fla.L.J. 131 (1947).
[3] Tiffany, supra, § 221; Payne, The English Theory of Conveyances Prior to The Land Registration Acts, Ala.L.Rev. 227, 240-41 (1955).
[4] See 27 Hen. 8, c. 10 (1535), as quoted in Smith, supra at 53-54.
[5] Ames, The Origin of Uses and Trusts, 21 Harv. L.Rev. 261 (1908); Bordwell, Equity and The Law of Property, 20 Iowa L.Rev. 1 (1934).
[6] 4 H. Tiffany, The Law of Real Property, § 957 (3d ed. 1975).
[7] Tiffany, supra Ames, supra, at 268-69:

[F]or the most part equity declined to enforce gratuitous instruments under seal. There was, however, one class of gratuitous grants of land by deed in which equity created a use in favor of the donee; namely, grants or covenants to stand seised to the use of a blood relation, or of one connected by marriage. These uses are commonly said to arise in consideration of blood or marriage. But consideration in such cases is not used in its normal sense of the equivalent for a promise, but in the general sense of reason or inducement for the agreement to stand seised. The exception in favor of those related by blood or marriage had in truth nothing to do with the doctrine of consideration and was established in the interest of the great English families.
[8] Ames, supra, at 267: "Equity could not ... refuse relief to the buyer of land against a seller who, having the purchase money in his pocket, refused to convey... ."
[9] Ames, supra; Smith, supra.
[10] See 6 A R. Powell, The Law of Real Property § 880 (P. Rohan, ed. 1984); Bordwell, Equity and the Law of Property, 20 Iowa L.Rev. 1, 12-13 (1934); Payne, The English Theory of Conveyances Prior to the Land Registration Acts, 7 Ala.L.Rev. 227, 240-41 (1955).
[11] See, e.g., Farrington v. Greer, 94 Fla. 457, 113 So. 722 (1927); Scott v. Fairlie, 81 Fla. 438, 89 So. 128 (1921); Vincent v. Hines, 79 Fla. 564, 84 So. 614 (1920); Skinner Mfg. Co. v. Wright, 56 Fla. 561, 47 So. 931 (1909); Parken v. Safford, 48 Fla. 290, 37 So. 567 (1904).
[12] E.g., Elvins v. Seestedt, 141 Fla. 266, 193 So. 54 (1940); Hamilton v. Flowers, 134 Fla. 328, 183 So. 811 (1938); Newman v. Equitable Life Assurance Society, 119 Fla. 641, 160 So. 745 (1935); Budd v. Long, 13 Fla. 288 (1869).
[13] Similarly in Tampa Northern R. Co. v. City of Tampa, 104 Fla. 481, 140 So. 311 (1932), the grantee was held entitled to reformation of the deed where the conveyance was made in exchange for a promise to develop the land and improvements were constructed.
[14] See also Harkness v. Fraser, 12 Fla. 336 (1868), where the court declined cancellation sought on the ground that the agreed consideration had not in fact been paid.
[15] See Neal v. Gregory, 19 Fla. 356 (1882), where the lack of consideration was one factor in setting aside a fraudulent conveyance.